[Cite as *Ross v. Wendel*, 2017-Ohio-7804.]

IN THE COURT OF APPEALS

TWELFTH APPELLATE DISTRICT OF OHIO

CLERMONT COUNTY

EARNIE ROSS, et al.,                    :

    Plaintiffs-Appellants,          :

  - vs -                                  :

CHAD WENDEL, et al.,                    :

    Defendants-Appellees.           :

CASE NO. CA2016-10-070

O P I N I O N
9/25/2017

CIVIL APPEAL FROM CLERMONT COUNTY COURT OF COMMON PLEAS
Case No. 2013 CVH 01874

Eric P. Allen and C. Stephen Kilburn, 12 East Warren Street, Lebanon, Ohio 45036, for plaintiffs-appellants

David P. Bolek, 6200 South Gilmore Road, Fairfield, Ohio 45014, for defendants-appellees

**M. POWELL, J.**

{¶ 1} Plaintiffs-appellants, Earnie and Kristine Ross, and their two minor children ("the Rosses"), appeal the decision of the Clermont County Court of Common Pleas dismissing their claims for negligent supervision and negligent infliction of emotional distress against defendants-appellees, Steven and Kathleen Seitz ("the Seitzes").

{¶ 2} In the fall of 2012, the Seitzes' son Wesley, then age 16, poached numerous deer in the rural land near the Seitzes' home in Stonelick Township, Ohio. Wesley and other

young people in the area were illegally harvesting antlered deer as part of an informal competition. Concerned neighbors in the area, including Earnie Ross, reported suspected poaching activity to wildlife officers with the Ohio Department of Natural Resources ("ODNR").

{¶ 3} Mr. Ross encountered Wesley one day and they discussed the poaching activity. Wesley's statements led Mr. Ross to correctly suspect that Wesley was poaching. Mr. Ross reported his suspicions to ODNR.

{¶ 4} On November 23, 2012, wildlife officers conducted a surveillance operation of the poaching area. Two officers in an airplane observed a vehicle that appeared to be "spotlighting" deer. "Spotlighting" is deer poaching that occurs at night and involves shining a bright light into a deer's eyes, which will "freeze" the deer in place allowing the poacher to shoot the deer.

{¶ 5} Wildlife officers on the ground attempted to stop the vehicle, which briefly eluded them. Eventually, the vehicle stopped and officers arrested the occupants, one of whom was Wesley. Wesley thereafter confessed to poaching.

{¶ 6} Wesley's parents testified that Wesley was "grounded" following the poaching arrest. However, the length of Wesley's grounding and how strictly his parents enforced it is unclear. Wesley claimed his parents' permission was necessary if he went anywhere after the poaching arrest.

{¶ 7} Before the poaching arrest, Mr. Ross was driving by the Seitz home on a frequent basis. This was unusual because the Seitz home was on a street that ended at a closed bridge. Wesley testified that Mr. Ross would slowly drive by his home and on two occasions Mr. Ross shouted at him that he was a poacher.

{¶ 8} Wesley said the frequency of Mr. Ross driving by his home actually increased after his poaching arrest. In fact, Mr. Ross was driving by the home so frequently that Mr.

Seitz installed a trail camera near the road. Mr. Seitz testified that in one month Mr. Ross drove past their home 54 times.

{¶ 9} In his deposition, Mr. Ross admitted that he would go down the road "all the time." When asked what purpose he had for going down the road, he responded that it was a "public road." Mr. Ross also claimed he was checking on a neighbor's property down that road.

{¶ 10} On December 23, 2012, Wesley and his friend Chad Wendel were at the Seitz home. Wesley enlisted Chad's help to set fire to Mr. Ross' two trucks. Chad testified that Wesley was mad and wanted to get back at Mr. Ross for his poaching arrest. Wesley testified that his goal was to destroy the trucks "to keep [Mr. Ross] from driving past the house." Wesley denied that his motivation was retribution for Mr. Ross reporting him for poaching.

{¶ 11} Wesley asked his parents for permission to leave the house with Chad to rent a movie. Permission was granted on the condition that Wesley rent the movie and immediately return home.

{¶ 12} Wesley and Chad left the house in a vehicle at around 10:00 p.m. Shortly before 10:30 p.m., Wesley and Chad proceeded to the Ross home, parked their vehicle somewhat away from the home and then walked up the driveway with motor oil-filled bottles. They doused Mr. Ross' two trucks with oil, ignited the oil, fled, and returned to the Seitz home. The arson significantly damaged Mr. Ross' trucks as well as Ms. Ross' SUV.

{¶ 13} In their depositions, Wesley and Chad each accused the other of discussing the arson publicly, which eventually led to their arrest about three months later. Wesley confessed after his arrest. Ultimately, a juvenile court adjudicated Wesley a delinquent child for his actions in the poaching and arson incidents.

{¶ 14} In December 2013, the Rosses filed this action against Wesley, Chad, and the

Seitzes. The Rosses alleged various intentional tort claims against Wesley and Chad. The Rosses asserted various causes of action against the Seitzes including statutory parental liability claims for property damage as well as common law tort claims alleging negligent supervision of Wesley and negligent infliction of emotional distress ("NIED").

{¶ 15} After discovery, the Seitzes moved for partial summary judgment on the Rosses' negligent supervision and NIED claims. In opposition, the Rosses submitted summary judgment evidence including several affidavits and a doctor's medical report. The Seitzes moved to strike some of this evidence.

{¶ 16} In June 2015, the court issued its decision granting the Seitzes' summary judgment motion with respect to the Rosses' claim of negligent supervision, finding that the Rosses failed to demonstrate that the Seitzes were aware or should have been aware that Wesley would commit arson. The court further granted the Seitzes summary judgment on the Rosses' NIED claim because the court found it derivative of the negligent supervision claim. Finally, the court granted the Seitzes' motion to strike with respect to several portions of one affidavit, the entirety of another affidavit, and the entirety of the medical report.

{¶ 17} The Rosses voluntarily dismissed their claims against Wesley and Chad. The Rosses tried the parental liability statute claims to a jury. The jury awarded the Rosses $23,515.65 in damages, which the court later reduced to $15,000, i.e., the statutory cap on damages. The court also awarded the Rosses an additional $6,654.02 in attorney fees. The Rosses appeal from the trial court's grant of partial summary judgment in favor of the Seitzes and assign two errors for our review.

{¶ 18} Before we discuss the Rosses' assignments of error we address the Seitzes' argument that this appeal is moot. Following the jury verdict, the Seitzes paid the Rosses the judgment awarded to them by the jury upon their parental liability claims, including attorney fees. Thereafter the parties filed, and the court entered, a "satisfaction of judgment" which

provided: "[i]t having come to the Court's attention that Defendants Steven and Kathleen Seitz, in the within cause, have fully paid the Judgment taken against them in this matter. The Court hereby causes a Satisfaction of Judgment to be entered as a matter of record." The Satisfaction of Judgment does not dismiss the case with prejudice, or otherwise address the case beyond the "Judgment taken against" the Seitzes.

{¶ 19} The Seitzes argue that their satisfaction of judgment ended the case, rendering this appeal moot, and cite *Blodgett v. Blodgett*, 49 Ohio St.3d 243, 245 (1990). *Blodgett* involved a divorce, and specifically the division of marital property. *Id.* at syllabus. While the parties were appealing the trial court's decision, the wife signed a satisfaction of judgment in return for the release of marital assets awarded to her by the trial court. *Id.* The Ohio Supreme Court held that the satisfaction of judgment rendered the appeal moot, holding, "[i]t is a well-established principle of law that a satisfaction of judgment renders an appeal from *that judgment* moot." *Id.* at 245. (Emphasis added.)

{¶ 20} This court does not conclude that *Blodgett*, which involved a single cause of action, i.e., a complaint for divorce and request for division of marital property, is applicable in this appeal. We agree that the Rosses would be precluded from appealing any adverse ruling with respect to the parental liability statute claims because the Seitzes satisfied *that judgment.* However, the Seitzes could not satisfy any judgment with respect to the Rosses' earlier dismissed negligent supervision and NIED claims because the court disposed of those claims before trial. Thus, because the satisfaction of judgment applied only to the Rosses' parental liability statute claims, we conclude that the Rosses may appeal the trial court's dismissal of their negligent supervision and NIED claims. *See*, *e.g.*, *Darwish v. Harmon*, 91 Ohio App.3d 630, 632-633 (8th Dist.1992) (holding that a satisfaction of judgment applied only to the plaintiff's damages for pain and suffering and did not apply to damages related to medical expenses because the trial court disallowed evidence supporting medical expenses).

{¶ 21} Assignment of Error No. 1:

{¶ 22} THE TRIAL COURT ERRED IN GRANTING SUMMARY JUDGMENT FOR APPELLEES STEVEN AND KATHLEEN SEITZ.

{¶ 23} The Rosses argue genuine issues of fact exist concerning whether the Seitzes failed to exercise reasonable control over Wesley and whether they sanctioned his conduct. The Rosses further argue that the summary judgment record contains evidence that they suffered emotional distress, thus demonstrating a triable issue on their NIED claim.

{¶ 24} "This court reviews summary judgment decisions de novo, which means that we review the trial court's judgment independently and without deference to its determinations, and use the same standard in our review that the trial court should have employed." *Ludwigsen v. Lakeside Plaza, LLC*, 12th Dist. Madison No. CA2014-03-008, 2014-Ohio-5493, ¶ 8. "Summary judgment is appropriate under Civ.R. 56(C) when (1) there are no genuine issues of material fact to be litigated; (2) the moving party is entitled to judgment as a matter of law; and (3) when all evidence is construed most strongly in favor of the nonmoving party, reasonable minds can come to only one conclusion, and that conclusion is adverse to the nonmoving party." *Id.* at ¶ 9, citing *Zivich v. Mentor Soccer Club, Inc.*, 82 Ohio St.3d 367, 369-70 (1998).

Negligent Supervision

{¶ 25} At common law, a parent is not ordinarily liable for damages caused by a child's wrongful conduct. *Huston v. Konieczny*, 52 Ohio St.3d 214, 217 (1990); *Whitaker v. Davis*, 12th Dist. Warren No. CA96-07-060, 1997 Ohio App. LEXIS 287, *4. However, a parent may be held liable for negligent acts when the injury committed by the child is a foreseeable consequence of the parent's negligence. *Huston* at *id.* citing *Kuhns v. Brugger*, 135 A.2d 395, 404, fn. 14, 390 Pa. 331 (1957). "In those circumstances, liability arises from the conduct of the parent." *Id.*, citing *Bankert v. Threshermen's Mut. Ins. Co.*, 329 N.W.2d 150,

153, 110 Wis.2d 469 (1983).

{¶ 26} In Ohio, parental knowledge of a child's "vicious propensities" is an essential element in establishing negligent supervision. *Landis v. Condon*, 95 Ohio App. 28, 29-30 (2d Dist.1952). "'To establish foreseeability of the act or injury [pursuant to negligent supervision], plaintiff must prove that specific instances of prior conduct were sufficient to put a reasonable person on notice that the act complained of was likely to occur.'" (Alteration in original.) *Nearor v. Davis*, 118 Ohio App.3d 806, 813 (1st Dist.1997), quoting *Haefele v. Phillips*, 10th Dist. No. 90AP-1331, 1991 Ohio App. LEXIS 2038, 4 (Apr. 23, 1991). "[P]arents cannot be held liable for negligent supervision of their children when the parents do not know of the children's propensity to engage in the sort of conduct that caused the plaintiff's injury." *Shupe v. Childers*, 5th Dist. Fairfield No. 2003CA00068, 2004-Ohio-1767, ¶ 16.

{¶ 27} The Rosses argue that authorities arrested Wesley for poaching a month before the arson and that if the Seitzes ensured that Wesley was supervised when leaving the home he would not have had the opportunity to commit the arson. However, Wesley's acts of poaching would not reasonably provide the Seitzes with any knowledge or warning that Wesley would commit arson.

{¶ 28} The Rosses argue that the Seitzes were aware that after Wesley's poaching arrest he purchased a rifle at a flea market for protection from Mr. Ross. Wesley admitted that he bought a .177 caliber rifle, which he described as a "varmint" gun. Chad testified that Wesley used it to continue poaching after his arrest. Wesley denied that he used it to poach. The Seitzes testified that they discovered the gun and took it away from Wesley. This court concludes that Wesley's decision to acquire a small caliber rifle at a flea market, even if it was primarily intended for protection from Mr. Ross, would not reasonably indicate to the Seitzes that Wesley had a propensity to commit arson.

{¶ 29} At best, the record suggests that Seitzes were aware their son had an issue with Mr. Ross, as Wesley had mentioned to them on a few occasions that Mr. Ross was "harassing" him, driving past the home, yelling at him, and repeatedly calling him a poacher. The Seitzes both agreed that they wish they had paid more attention to Wesley in this regard. However, simply because Wesley told his parents that he was being harassed by an adult neighbor would not reasonably suggest that Wesley would commit arson. Wesley's propensity to poach deer and his purchase of a hunting rifle for allegedly defensive purposes, is qualitatively different from a propensity to commit arson. In sum, there is no evidence in the record that the Seitzes knew that Wesley had any propensity to commit arson based on his prior acts and thus no genuine issue of fact for trial on this matter.

{¶ 30} The Rosses further argue that the Seitzes acquiesced and encouraged Wesley's conduct. When parents know of their child's wrongdoing and consent to it, direct it or sanction it, they may be held liable. *Huston*, 52 Ohio St.3d at 218. First, the Rosses argue that they submitted the affidavit of a neighbor who witnessed Mr. Seitz driving a truck with five gas cans in the truck bed towards the Ross home two weeks before the incident, suggesting some involvement by Mr. Seitz. However, this single observation does not support a conclusion that Mr. Seitz was involved in planning the arson. Such a conclusion is far too tenuous and speculative to create a triable issue for the jury. And in fact, the trial court struck from the neighbor's affidavit the portion opining that Mr. Seitz was involved in the arson because it was speculative. The Rosses have not appealed that aspect of the court's decision.

{¶ 31} Second, the Rosses argue that the Seitzes were aware that Wesley was poaching deer and consented to his poaching. The record reflects that Wesley killed an antlered deer after he had earlier harvested his sole antlered deer for the hunting season and

brought it openly to Mr. Seitz.[1]  Mr. Seitz illegally used his tag to register that deer harvest, which he was later charged for after the poaching investigation.  However, these facts again do not demonstrate that the Seitzes had any reason to suspect that Wesley would commit arson.

{¶ 32}  The court properly dismissed the Seitzes' claim of negligent supervision.  Our decision also necessarily supports the trial court's decision to dismiss the NIED claim because it was derivative of the negligent supervision claim, in the sense that the alleged negligent supervision was the negligent act upon which the NIED claim was based.  We overrule the Rosses' first assignment of error.

{¶ 33}  Assignment of Error No. 2:

{¶ 34}  THE TRIAL COURT ABUSED ITS DISCRETION WHEN IT STRUCK ALLISON KELLY'S AFFIDAVIT AND DR. SULLIVAN'S IME REPORT.

{¶ 35}  The Seitzes moved to strike an affidavit signed by Ms. Ross' close friend and a medical report filed by the Rosses in the summary judgment proceedings to support their NIED claim.  The court struck the affidavit in its entirety on hearsay grounds and because it was speculative.  The court struck the medical report for the Rosses' failure to timely file an authenticating affidavit.

{¶ 36}  The friend's affidavit averred that she observed emotional changes in Ms. Ross following the incident.  The affidavit further averred that she observed emotional changes in Mr. Ross as well as the two minor children.  The unadmitted medical report contained a medical doctor's opinion that Mr. Ross was suffering post-traumatic stress disorder because of the arson.

{¶ 37}  Accordingly, both the affidavit and medical report were probative of potential

---

1. The Seitzes testified, and Wesley agreed, that they were unaware of the numerous other deer he poached that fall.

emotional damages suffered by the Rosses. However, we have already held that the trial court properly dismissed the Rosses' NIED claim, which renders this assignment of error moot, and we need not address it. App.R. 12(A)(1)(c). Consequently, we overrule the Rosses' second assignment of error.

{¶ 38} Judgment affirmed.

S. POWELL, P.J., concurs.

PIPER, J., dissents.

**PIPER, J., dissenting.**

{¶ 39} If I were to address the merits of the appellants' appeal, I would agree with the majority's result. While acknowledging that the law prefers resolving cases on their merits, we must note the law mandates it unnecessary to resolve disputed issues that have already been legally satisfied. Given the procedural events in the court below, appellants' appeal must be dismissed as moot.

<u>Blodgett</u> As Binding Authority

{¶ 40} It is well-established law that a satisfaction of judgment renders an appeal moot where the judgment is voluntarily paid and accepted as satisfaction. This resolves the case and operates to eliminate the right to appeal. *Blodgett v. Blodgett*, 49 Ohio St.3d 243, 245 (1990), citing *In re Appropriation for Highway Purposes*, 169 Ohio St. 314, 315 (1959). Simply put, the satisfaction of judgment "puts an end to the controversy" previously litigated. *Krauss v. Kilgore*, 12th Dist. Butler No. CA99-02-031, 1999 Ohio App. LEXIS 3425, *5-6 (July 26, 1999), citing *Blodgett.* Courts routinely acknowledge Civ.R. 62 which provides for a stay thereby preserving the right to appeal issues or controversies attendant to the judgment from which the appeal is taken. *MHN SUB I, L.L.C. v. Donnelly*, 11th Dist. Lake No. 2014-L-031,

2014-Ohio-4128.

{¶ 41} The majority opinion disregards the principles of law established in *Blodgett* because the factual issues in dispute: 1) the effects of a nuptial agreement, 2) alimony, and 3) property classification and division, were derived from a single divorce complaint. Yet, when analyzing *Blodgett* and its application by numerous courts, the form of the complaint is a difference without a distinction.

{¶ 42} The fact that *Blodgett* was a divorce case does not restrain the application of its legal tenets from being applied to other civil disputes.[2] Many courts, in a variety of civil disputes have determined *Blodgett* and its progeny produces an issue of mootness when the judgment being appealed from has been satisfied. *CitiMortgage, Inc. v. Snider*, 11th Dist. Geauga No. 2016-G-0072, 2016-Ohio-8111 (post foreclosure proceedings); *Ohio Power Co. v. Ogle*, 4th Dist. Hocking No. 12CA14, 2013-Ohio-1745 (condemnation action); *Capitol Communications, Inc. v. GBS Corp.*, 10th Dist. Franklin Nos. 10AP-08 and 10AP-09, 2010-Ohio-5964 (trust security interest in funds escrowed); *Washington Mut. Bank, F.A. v. Wallace*, 194 Ohio App.3d 549, 2011-Ohio-4174 (12th Dist.), *rev'd on other grounds,* 130 Ohio St.3d 1492, 2011-Ohio-6556 (foreclosure proceedings); *Cook Family Invests. v. Billings*, 9th Dist. Lorain No. 07 CA 009281, 2009-Ohio-73 (cognovit note); *Wiest v. Wiegele*, 170 Ohio App.3d 700, 2006-Ohio-5348 (1st Dist.) (motion to vacate judgment); and *Blood v. Nofzinger*, 162 Ohio App.3d 545, 2005-Ohio-3859, ¶ 20 (6th Dist.) ("the trial court failed to recognize that a 'satisfaction of judgment' does not mean a 'partial' or 'substantial satisfaction of judgment'").

{¶ 43} Appellants suggests, as the majority sets precedent today, that a satisfaction of

---

2. Stare decisis provides adherence to precedent on questions of law insuring consistency. The rule of law provided in *Blodgett* is not unusual or aberrant, as it relies upon previously decided Ohio Supreme Court cases in forming its legal pronouncements which have been soundly applied by numerous appellate districts.

- 11 -

judgment needs no stay because this court can imply that the satisfaction of judgment, which was paid in full and executed, was only a "partial" satisfaction of judgment.

**{¶ 44}** The majority also suggests the satisfaction of judgment entry must express a dismissal with "prejudice" in order to end the litigation. Yet no authority holds that the absence of the word "prejudice" acts to preserve earlier litigated issues or operates as a stay upon the judgment being satisfied. The effects of a particular way of granting dismissal is an animal unrelated to the effects of executing a satisfaction of judgment. Since the judgment being appealed from, if satisfied, terminates all issues and controversies, there is no practical need for a requirement that "prejudice" be expressed. *Blodgett.*

The Eighth District

**{¶ 45}** To bolster its reasoning, the majority relies upon *Darwish v. Harmon*, 91 Ohio App.3d 630 (8th Dist.1992). That case, however, does not mention *Blodgett* because "*mootness*" was not raised. In *Harmon*, appellee attempted to argue it had factually satisfied the judgment. Appellant successfully asserted it had *specifically refused* to execute a satisfaction of judgment. Since there was no execution of a satisfaction of judgment, the court rejected appellee's claims of satisfaction without the need to address *Blodgett*, Civ.R. 62, or the concept of "mootness."

**{¶ 46}** If we were to look to the Eighth District for guidance, our facts are more analogous to the more recent case of *Francis David Corp. v. MAC Auto Mart, Inc*, 8th Dist. Cuyahoga No. 93951, 2010-Ohio-1215. In that case, appellant wanted to seek further monetary damages but the court recognized that because no stay had been sought, satisfaction of the judgment waived the right to appeal because the judgment appealed from became moot. *Id.*, citing *Blodgett.* We have misplaced reliance on the factually different case of *Harmon* and overlooked the significance of *MAC Auto's* recognition of *Blodgett* as binding precedent.

Our Facts

**{¶ 47}** Before any notice of appeal had been filed, appellee tendered a check to satisfy the judgment. Appellants voluntarily accepted the check and *appellants* prepared a satisfaction of judgment. The satisfaction of judgment was *not* designated as *a partial* satisfaction of judgment nor did appellants request a stay or otherwise take action to preserve the right to appeal from that judgment.[3] An appeal must flow from a final appealable order, which is the judgment entry acting to terminate the litigation unless an appeal is initiated. This is why a stay must be sought if planning on initiating an appeal. The final appealable order or judgment entry appellants now attempt to appeal from has in fact been satisfied and the satisfaction of that judgment terminates the litigation. *In re Appropriation for Highway Purposes*, 169 Ohio St. 314.

Conclusion – An Apple Unpeeled

**{¶ 48}** "When the nonappealing party is successful in obtaining satisfaction of the judgment, the appeal must be dismissed because the issues raised in the appeal have become moot." *Wiest*, 2006-Ohio-5348 at ¶ 12. The satisfaction of judgment waives the right to appeal. *Alexander v. MHL Ltd.*, 1st Dist. Hamilton No. C-120063, 2012-Ohio-4046.

**{¶ 49}** As our colleague, Judge Ringland, once emphasized, it is impossible to undo the effects of a judgment already satisfied. He wrote that a satisfaction of the judgment extinguishes the subject matter of the case and is no longer under the control of the court. Once this has occurred it is much like "unpeeling the apple," and the court is unable to provide relief. *Villas at Pointe of Settlers Walk Condominium Assn. v. Coffman Dev. Co.*, 12th Dist. Warren No. CA2009-12-165, 2010-Ohio-2822.

---

3. There was no stay granted pursuant to Civ.R. 62(E) to preserve appellants' right to appeal. The result of failing to obtain a stay of the judgment is that the nonappealing party can obtain satisfaction of the judgment despite a potential appeal, consequently, the appeal must be dismissed because any issues that would be raised have become moot. *MHN SUB I, L.L.C.*, 2014-Ohio-4128.

{¶ 50} An attempt to legally unpeel the apple with the clear, yet simple, facts before us would be a messy proposition, indeed.  Therefore, I determine the appeal is moot and should be dismissed.