[Cite as *Baker v. Bunker Hill Haven Home*, 2024-Ohio-875.]

IN THE COURT OF APPEALS

TWELFTH APPELLATE DISTRICT OF OHIO

BUTLER COUNTY

| | | |
|---|---|---|
| KELLY BAKER, ADMINISTRATOR FOR THE ESTATE OF BRYCE L. HIZER, | : | |
| | : | CASE NO. CA2023-08-095 |
| Appellant, | | |
| | : | O P I N I O N |
| | | 3/11/2024 |
| - vs - | : | |
| | : | |
| BUNKER HILL HAVEN HOME dba BUNKER HILL HAVEN FOR BOYS, et al., | : | |
| | : | |
| Appellees. | | |

CIVIL APPEAL FROM BUTLER COUNTY COURT OF COMMON PLEAS
Case No. CV 2021 12 1923

O'Connor, Acciani & Levy, and Robert B. Acciani, for appellant.

Collins Roche Utley & Garner, and Richard M. Garner; and Reminger Co., LPA, and Vincent P. Antaki, for appellees.

**S. POWELL, P.J.**

{¶ 1} Appellant, Kelly Baker, the administrator of the estate of her late son, Bryce L. Hizer, appeals the decision of the Butler County Court of Common Pleas granting summary judgment to appellees, Bunker Hill Haven for Boys and Bunker Hill Haven Trust

d/b/a Bunker Hill Haven for Boys (collectively, "Bunker Hill"), in this wrongful death action. For the reasons outlined below, we affirm the trial court's summary judgment decision.

**Introduction**

**{¶ 2}** Bunker Hill is a private, non-lockdown, non-profit facility located in Hamilton, Butler County, Ohio, that is licensed by the Ohio Department of Job and Family Services to serve as a group home for wayward boys. At all times relevant, Todd Howard was one of those boys residing on the Bunker Hill property.[1] On the evening of December 30, 2019, Howard, who was then just 16 years old, snuck off the Bunker Hill property without permission through a well-known, yet unmonitored trail leading to a nearby park. Howard did this to meet up with several friends, including Hizer, so that they could drive to Cincinnati to purchase and thereafter smoke marijuana. Another one of the friends Howard was to meet up with that evening, Zeb Freeman, had been given permission by his father, Derrick, to drive his father's car. However, it was just his son, Zeb, whom Derrick had given permission to drive the car. There is no dispute that it was the unlicensed Howard who was driving when the car ran off the road and struck a tree, launching the unbuckled, 15-year-old Hizer out of the car and, ultimately, to his death.

**Facts and Procedural History**

**{¶ 3}** On December 28, 2021, Baker, as the administrator of the estate of her late son, Hizer, filed a complaint naming Howard, Freeman, Freeman's father, Derrick, and Bunker Hill as defendants. The complaint alleged a total of four causes of action against the defendants. It was only the fourth cause of action, however, that was brought against Bunker Hill. Within that cause of action, Baker alleged that it was Bunker Hill's negligence in failing to properly supervise Howard and prevent Howard from sneaking off the Bunker

---

1. Except for Hizer, who is deceased, we have changed the names of all minors who appear in this opinion.

Hill property without permission on the evening of December 30, 2019, that was the actual and proximate cause of her son's death. To prevail on this claim, Baker was required to prove: "(1) the existence of a duty owing to plaintiff's decedent, i.e., the duty to exercise ordinary care, (2) a breach of that duty, and (3) proximate causation between the breach of duty and the death." *Bennison v. Stillpass Transit Co.*, 5 Ohio St.2d 122 (1966), paragraph one of the syllabus. "The existence of a duty is fundamental to establishing actionable negligence, without which there is no legal liability." *Uhl v. Thomas*, 12th Dist. Butler No. CA2008-06-131, 2009-Ohio-196, ¶ 10.

**{¶ 4}** On May 22, 2023, Bunker Hill filed a motion for summary judgment on Baker's negligent supervision claim. Baker filed a memorandum in opposition to Bunker Hill's motion on June 30, 2023. Bunker Hill then filed a reply in support of its motion for summary judgment on July 7, 2023. Shortly thereafter, on July 27, 2023, the trial court issued a decision granting Bunker Hill's motion for summary judgment in its entirety. In so holding, the trial court initially noted that Baker had posited two theories under which she claimed Bunker Hill was responsible for her son's death: (1) "failure to have procedures, guidelines and adequate measures to restrain residents from leaving its property;" and (2) "the responsibility of a parent via the doctrine of *in loco parentis*." (Emphasis sic.)

**{¶ 5}** Addressing Baker's argument under the doctrine of in loco parentis first, the trial court stated:

> In the present matter, while Plaintiff argues the defendants' knowledge [that Howard] frequently left its grounds is sufficient to establish a duty of care, this is not the act that is at issue in the complaint. Plaintiff's claim is wrongful death via a traffic accident. The mere fact that [Howard] inquired as to obtaining a driver's license is insufficient to establish a likelihood a parent would believe he might unlawfully operate a motor vehicle. Even if this were enough, Plaintiff's *in loco parentis* argument still fails as she does not demonstrate

- 3 -

through any evidence the child's "propensity to engage" in [the] operation of a motor vehicle.

(Emphasis sic.)

**{¶ 6}** Turning then to Baker's argument that she did not need to establish Bunker Hill's duty of care through expert testimony, but could instead simply rely on lay witness testimony, the trial court stated:

> Here, Plaintiff desires to impose liability for failing to maintain adequate control over a resident in a non-lockdown environment without having to establish what those standards might be. Bunker Hill maintains policies that essentially mirror those of parents, i.e., no leaving without notification, and as many American parents can attest from experience, teenagers routinely violate these directives. To go beyond this and artificially impose a higher standard of care, Plaintiff must be able to provide some cognizable industry standard as a home, contrary to teenage angst, is not a prison.

**{¶ 7}** Continuing with its analysis, the trial court then noted that, even if Baker could prove such a duty without the need for expert witness testimony, Baker's claim still failed to establish the "requisite causal connection." Explaining why that was, the trial court stated:

> Plaintiff argues that [Howard's] propensity to "escape" the confines of Bunker [Hill] through the use of a "well known" trail that avoided Bunker Hill cameras is sufficient to establish a causal connection to the accident.
>
> Bunker Hill may have, or not, known residents slipped away. This at best provides evidence that delinquent teenage boys disobey. Plaintiff fails, beyond mere conclusory statements, to demonstrate the foreseeability [of] such behavior would lead to negligent operation of a motor vehicle.

The trial court thereafter concluded by noting that, even where all the above facts were true, Baker's negligent supervision claim against Bunker Hill nevertheless failed "at the moment Hizer voluntarily opted to forgo the potentially life-saving step of buckling his restraint system."

- 4 -

**Baker's Appeal and Single Assignment of Error**

{¶ 8} On August 25, 2023, Baker filed a notice of appeal from the trial court's decision granting Bunker Hill's motion for summary judgment. Following briefing, oral argument was held before this court on February 5, 2024. Baker's appeal now properly before this court for decision, Baker has raised one assignment of error for review. In that single assignment of error, Baker argues the trial court erred by granting summary judgment to Bunker Hill as it relates to her negligent supervision claim levied against it. We disagree.

*Summary Judgment Standard of Review*

{¶ 9} "Summary judgment is a procedural device used to terminate litigation when there are no issues in a case requiring a formal trial." *Franchas Holdings, LLC v. Dameron*, 12th Dist. Clermont No. CA2015-09-073, 2016-Ohio-878, ¶ 16. "This court reviews a trial court's summary judgment decision under a de novo standard." *Faith Lawley, LLC v. McKay*, 12th Dist. Warren No. CA2020-08-052, 2021-Ohio-2156, ¶ 26. De novo review means that this court uses the same standard the trial court should have used. *Brock v. Servpro*, 12th Dist. Butler No. CA2021-06-075, 2022-Ohio-158, ¶ 29. "That is to say, '[i]n de novo review, we independently review trial court decisions and give them no deference.'" *Guzzetta v. Guzzetta*, 12th Dist. Butler Nos. CA2023-06-064 and CA2023-07-084, 2024-Ohio-294, ¶ 17, quoting *Frost v. Evenflo Co., Inc.*, 2d Dist. Miami No. 2022-CA-29, 2023-Ohio-4561, ¶ 29.

*Summary Judgment Pursuant to Civ.R. 56*

{¶ 10} "Civ.R. 56 sets forth the summary judgment standard." *State ex rel. Becker v. Faris*, 12th Dist. Clermont No. CA2020-10-058, 2021-Ohio-1127, ¶ 14. "Pursuant to that rule, a court may grant summary judgment only when (1) there is no genuine issue of any material fact, (2) the moving party is entitled to judgment as a matter of law, and

(3) the evidence submitted can only lead reasonable minds to a conclusion that is adverse to the nonmoving party." *Spitzer v. Frish's Restaurants, Inc.*, 12th Dist. Butler No. CA2020-12-128, 2021-Ohio-1913, ¶ 6. "An issue is genuine only if the evidence is such that a reasonable jury could find for the non-moving party." *Abbuhl v. Orange Village*, 8th Dist. Cuyahoga No. 82203, 2003-Ohio-4662, ¶ 14. "A material fact is one which would affect the outcome of the suit under the applicable substantive law." *Hillstreet Fund III, L.P. v. Bloom*, 12th Dist. Butler No. CA2009-07-178, 2010-Ohio-2961, ¶ 9, citing *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 106 S.Ct. 2505 (1986).

{¶ 11} "The moving party bears the initial burden of informing the court of the basis for the motion and demonstrating the absence of a genuine issue of material fact." *Berkheimer v. REKM, LLC*, 12th Dist. Butler No. CA2022-03-026, 2023-Ohio-116, ¶ 18, citing *Dresher v. Burt*, 75 Ohio St.3d 280, 292 (1996). "Once this burden is met, the nonmoving party has a reciprocal burden to set forth specific facts showing there is some genuine issue of material fact yet remaining for the trier of fact to resolve." *Sullivan v. Mercy Health*, 12th Dist. Butler No. CA2022-02-023, 2022-Ohio-4445, ¶ 21. To do this, the nonmoving party may not simply rest upon the mere allegations or denials of the pleadings, but must instead "supply evidentiary materials setting forth specific facts showing there is a genuine issue of material fact for trial." *Anderson v. Jancoa*, 12th Dist. Butler No. CA2019-01-018, 2019-Ohio-3617, ¶ 23. "Summary judgment is proper if the nonmoving party fails to set forth such facts." *Taylor v. Atrium*, 12th Dist. Warren No. CA2018-07-074, 2019-Ohio-447, ¶ 10.

*Baker's Arguments and Analysis*

{¶ 12} To support her single assignment of error, Baker raises three arguments for this court's consideration. We will address each of those arguments in turn.

<u>Baker's First Argument</u>

**{¶ 13}** Initially, Baker argues the trial court erred by finding she could not, as a matter of law, establish a negligent supervision claim against Bunker Hill based upon the doctrine of in loco parentis. According to the Ohio Supreme Court, "'the term 'in loco parentis' means 'charged, factitiously, with a parent's rights, duties, and responsibilities.'" *State v. Noggle*, 67 Ohio St.3d 31, 33 (1993), quoting *Black's Law Dictionary* (6th Ed.1990). "A person in loco parentis has assumed the same duties as a guardian or custodian, only not through a legal proceeding." *Glancy v. Spradley*, 12th Dist. Butler No. CA2012-02-024, 2012-Ohio-4224, ¶ 7. "'The key factors of an in loco parentis relationship have been delineated as the intentional assumption of obligations incidental to the parental relationship, especially support and maintenance.'" (Emphasis deleted.) *McLoughlin v. Williams*, 12th Dist. Clermont No. CA2015-02-020, 2015-Ohio-3287, ¶ 9, quoting *Evans v. Ohio State Univ.*, 112 Ohio App.3d 724, 736 (10th Dist.1996).

**{¶ 14}** Given these principles, Baker argues that Bunker Hill clearly stood in the place of a parent—in loco parentis—to that of its residents by providing them with "a nurturing environment, a place to live, food, shelter and services such as psychiatric, medical and schooling and took on the overall obligations of care and supervision of each boy under its care." This would include Bunker Hill's then 16-year-old resident Howard. Therefore, according to Baker, given the special relationship that existed between Bunker Hill and Howard, it was error for the trial court to find she could not, as a matter of law, establish a negligent supervision claim against Bunker Hill based upon the doctrine of in loco parentis.

**{¶ 15}** However, even assuming Bunker Hill could be considered in loco parentis to Howard, it is well established that, in Ohio, "parental knowledge of a child's 'vicious propensities' is an essential element in establishing [a claim of parental] negligent

supervision." *Ross v. Wendel*, 12th Dist. Clermont No. CA2016-10-070, 2017-Ohio-7804, ¶ 26, quoting *Huston v. Konieczny*, 52 Ohio St.3d 214, 217 (1990). Therefore, to prove negligent supervision on behalf of a parent over his or her child, the plaintiff "must show that defendant parents had prior knowledge that the offending child had a particular 'vicious propensity' and they failed to exercise proper control over him." *Hau v. Gill*, 9th Dist. Lorain No. 98CA007061, 1999 Ohio App. LEXIS 3258, *9 (July 14, 1999); *see, e.g., Geico Choice Ins. Co. v. Willis*, 12th Dist. Warren No. CA2022-03-010, 2022-Ohio-4227 (affirming trial court's decision granting summary judgment to insurance company on its parental negligent supervision claim against a mother where the mother did not offer any evidence to demonstrate a genuine issue of material fact existed as to whether she knew her 17-year-old son had stolen the insured's vehicle and that she knew it was not the first time that her son had stolen a vehicle).

{¶ 16} The plaintiff must also "show that the alleged parental negligence was the proximate and foreseeable cause of the injury suffered." *Cogswell v. Clark Retail Ent.*, 11th Dist. Geauga No. 2003-G-2519, 2004-Ohio-5640, ¶ 19. "'To establish foreseeability of the act or injury pursuant to negligent supervision, plaintiff must prove that specific instances of prior conduct were sufficient to put a reasonable person on notice that the act complained of was likely to occur.'" (Brackets deleted.) *Shaver v. Peters*, 6th Dist. Erie No. E-22-028, 2023-Ohio-1097, ¶ 26, quoting *Nearor v. Davis*, 118 Ohio App.3d 806, 813 (1st Dist.1997). This is because, even where the doctrine of in loco parentis applies, "'parents cannot be held liable for negligent supervision of their children when the parents do not know of the children's propensity to engage in the sort of conduct that caused the plaintiff's injury.'" *Ross*, quoting *Shupe v. Childers*, 5th Dist. Fairfield No. 2003CA00068, 2004-Ohio-1767, ¶ 16, citing *Doe v. Kahrs*, 75 Ohio Misc.2d 7, 10 (C.P.1995).

{¶ 17} In this case, Baker failed to provide any evidence to indicate Bunker Hill

knew its resident, Howard, had a propensity to engage in the unlawful and negligent operation of a motor vehicle after sneaking off its property without its permission. Rather, when viewing the evidence in the light most favorably to Baker, as the non-moving party, the record establishes that Bunker Hill knew, at worst, that Howard would occasionally sneak off its property to smoke marijuana. However, that Howard would occasionally sneak off the Bunker Hill property without its permission to smoke marijuana is not the sort of conduct that caused Hizer's death. It was instead Howard's unlawful and negligent operation of a motor vehicle that caused the unbuckled, 15-year-old Hizer's tragic passing after Howard drove off the road and into a tree, launching Hizer out of the car and, ultimately, to his death.

{¶ 18} Contrary to what Baker argued to this court during oral argument, the then 16-year-old Howard's propensity to occasionally sneak off Bunker Hill's property to smoke marijuana is not the same, and is in fact qualitatively different from, the propensity of a 16-year-old boy like Howard to engage in the negligent operation of a motor vehicle. *See, e.g., Ross*, 2017-Ohio-7804 at ¶ 29 (finding a 16-year-old boy's "propensity to poach deer and his purchase of a hunting rifle for allegedly defensive purposes, is qualitatively different from a propensity to commit arson" in a case alleging negligent supervision by the 16-year-old boy's parents). Therefore, because Baker failed to provide any evidence to indicate Bunker Hill knew its unlicensed resident, Howard, had a propensity to engage in the unlawful and negligent operation of a motor vehicle after sneaking off its property, the trial court did not err by finding Baker could not, as a matter of law, establish a claim of negligent supervision against Bunker Hill based upon the doctrine of in loco parentis. Accordingly, finding no error in the trial court's decision, Baker's first argument fails.[2]

---

2. In reaching this decision, we take the time to note the trial court's finding "the mere fact that [Howard]

Baker's Second Argument

**{¶ 19}** Next, Baker argues the trial court erred by finding Bunker Hill's actions in "negligently failing to supervise" the then 16-year-old Howard was not the "actual and proximate" cause of her son Hizer's death. We disagree.

**{¶ 20}** As noted above, it was not Bunker Hill's alleged negligent supervision of Howard that caused Hizer's death. It was instead Howard's unlawful and negligent operation of a motor vehicle that caused Hizer's tragic passing. Baker's argument that, "but for" Bunker Hill failing to "exercise parental control over" its residents, Howard "would have stayed under the supervision of the staff" at Bunker Hill, "would not have been behind the wheel of a vehicle," and thus, "would not have caused injury to [Hizer]," is not well taken. With that logic, the person who planted the tree that Howard struck would also be liable.

**{¶ 21}** No, even if we were to accept Baker's argument, there was a clear break in the chain causation, and at least one, if not more, sufficient superseding causes that absolve Bunker Hill from liability for Hizer's untimely and unfortunate passing. *See, e.g., Magill v. Moore*, 12th Dist. Butler No. CA2005-08-211, 2006-Ohio-3466, ¶ 14-21 (rejecting appellant's contention "that it is a question for the jury to decide whether it was foreseeable that a thief might steal appellee's car, and that a police pursuit with possible injuries to [appellant] would follow," as the theft of the car was a sufficient superseding cause to, as a matter of law, absolve the appellee from liability for appellant's injuries). This would include, just as the trial court found, the fact that Hizer chose, for whatever reason, not to buckle himself into his seat with his seatbelt prior to the accident.

---

inquired as to obtaining a driver's license [to be] insufficient to establish a likelihood a parent would believe he might unlawfully operate a motor vehicle." We agree with the trial court's finding. To hold otherwise would subject virtually every parent to potential liability should their otherwise well-behaved, albeit unlicensed, 16-year-old child cause a tragic automobile accident after making the decision to take the family car out for a drive without permission.

Therefore, finding no error in the trial court's decision finding Bunker Hill's actions in "negligently failing to supervise" Howard was not the "actual and proximate" cause of her son Hizer's death, Baker's second argument also fails.

Baker's Third Argument

{¶ 22} Lastly, Baker argues the trial court erred by finding she needed to "produce an expert witness" if she hoped to overcome Bunker Hill's motion for summary judgment in this case. That is, Baker argues the trial court erred by finding expert witness testimony was necessary to establish her claim of negligent supervision against Bunker Hill based upon the doctrine of in loco parentis. To support this claim, Baker argues that, rather than procuring an expert witness, "[s]urely, an ordinary lay person can appreciate, understand, and evaluate the reasonable level of supervision that a parent should exercise over their children."

{¶ 23} However, while this may very well be true, the portion of the trial court's decision that Baker takes issue with did not require her to "qualify a 'parent' as an expert witness," as Baker suggests. That portion of the trial court's decision was instead nothing more than the trial court noting that expert witness testimony would be necessary to establish what the "reasonable standards of care and control" were in the industry in which Bunker Hill operates, i.e., what the "reasonable standards of care and control" were for private, non-lockdown, non-profit facilities like Bunker Hill catering to wayward boys. What those standards are, or should be, is clearly not something that would be within the knowledge or experience possessed by lay persons. That is instead an issue that would require testimony from an expert witness in accordance with Evid.R. 702.

{¶ 24} Pursuant to Evid.R. 702, expert witness testimony is necessary where the testimony being offered by the witness "either relates to matters beyond the knowledge or experience possessed by lay persons or dispels a misconception common among lay

persons." This would include, for instance, the standard of care for dentists*, see, e.g., Johnson v. Erbeck*, 12th Dist. Warren No. CA2023-05-038, 2023-Ohio-3402, ¶ 29 ("the standard of care and skill expected of a dentist must be determined from the testimony of dental experts"), as well as for residential group homes catering to individuals with autism. *See e.g., V. v. New Horizons in Autism*, 2023 N.J. Super. Unpub. LEXIS 1450, *22-27 (Aug. 21, 2023) (trial court did not err by finding plaintiffs were required to procure expert testimony to establish the standard of care in a residential group home for autistic individuals). We see no reason why that would be any different for private, non-lockdown, non-profit facilities like Bunker Hill catering to a group of wayward boys. Therefore, finding no error in the trial court's decision, Baker's third argument likewise fails.

### Conclusion

{¶ 25} For the reasons outlined above, and finding no merit to any of the three arguments raised by Baker herein, Baker's single assignment of error lacks merit and is overruled. Accordingly, having now overruled Baker's single assignment of error, Baker's appeal from the trial court's decision granting summary judgment to Bunker Hill is denied.

{¶ 26} Judgment affirmed.

M. POWELL and BYRNE, JJ., concur.