[Cite as *Faith Lawley, L.L.C. v. McKay*, 2021-Ohio-2156.]

IN THE COURT OF APPEALS

TWELFTH APPELLATE DISTRICT OF OHIO

WARREN COUNTY

| | | |
|---|---|---|
| FAITH LAWLEY, LLC, et al., | : | |
| Appellees, | : | CASE NO. CA2020-08-052 |
| | : | |
| - vs - | : | O P I N I O N<br>6/28/2021 |
| | : | |
| JOHN MCKAY, | : | |
| Appellant. | : | |

CIVIL APPEAL FROM WARREN COUNTY COURT OF COMMON PLEAS
Case No. 18CV91051

Robbins, Kelly, Patterson & Tucker, LPA, Richard O. Hamilton, Jr., Robert M. Ernst, 7 West Seventh Street, Suite 1400, Cincinnati, Ohio 45202, for appellees

Gottesman & Associates, LLC, Zachary Gottesman, 404 East 12th Street, First Floor, Cincinnati, Ohio 45202 and Crehan & Thumann, LLC, Lynne M. Longtin, 404 East 12th Street, Second Floor, Cincinnati, Ohio 45202, for appellant

**BYRNE, J.**

{¶1} Defendant-appellant, John McKay, appeals from the summary judgment decision of the Warren County Court of Common Pleas. The trial court dismissed McKay's counterclaims against plaintiffs-appellees, Eric Novicki, Christopher Lawley, and Faith Lawley, LLC ("the plaintiffs"), and granted the plaintiffs' requested declaratory judgment. For the reasons set forth below, we agree that McKay failed to identify any disputed issues

of material fact precluding summary judgment. Accordingly, we affirm the trial court's decision.[1]

## I. Factual Background

{¶2} McKay purchased an investment unit of Granite Creek Flexcap I, L.P. ("Granite Creek"), a small business investment hedge fund. McKay's funding commitment for the unit was $1.5 million. From June 2006 through the first quarter of 2010, McKay funded the unit with $900,000. McKay also paid $165,000 in taxes related to the unit.

{¶3} In early 2010, Granite Creek issued McKay a capital call for $75,000. McKay, however, was in the midst of a divorce and facing liquidity issues. He could not afford the cash call.

{¶4} McKay was acquaintances with Novicki and Lawley and had done business deals with them in the past. According to McKay, he approached Novicki and Lawley with a proposal that would allow him to avoid losing or diluting his investment. He would sell them the Granite Creek unit but retain an option to repurchase the unit at a later date.

{¶5} Novicki and Lawley agreed to this transaction and together they formed Faith Lawley, LLC – of which they would be the sole members – to hold the investment. To memorialize the transfer and option to repurchase, McKay had his attorney prepare a transfer agreement ("Transfer Agreement").

{¶6} Under the Transfer Agreement, Faith Lawley, LLC agreed to pay McKay $125,000 for the Granite Creek unit. Faith Lawley, LLC further agreed to pay the $75,000 capital call. According to McKay, the price for the unit was set "well below" his investment because the deal was intended to provide him with a quick cash infusion until he could repurchase the unit.

---

1. Pursuant to Loc.R. 6(A), we have sua sponte removed this appeal from the accelerated calendar and placed it on the regular calendar for purposes of issuing this opinion.

{¶7} The Transfer Agreement provided McKay with an option to repurchase the Granite Creek unit at any time through and including December 31, 2012. Thus, McKay had slightly less than two years to exercise the option. To exercise the option, the Transfer Agreement required McKay to give Faith Lawley, LLC written notice of his intent to exercise the option and to pay the option price prior to the expiration of the option period.

{¶8} The option price was the original purchase price of $125,0000 plus the $75,000 capital call payment, plus any other capital calls incurred by Faith Lawley, LLC, plus interest at 25% per annum on the total.[2] McKay characterized this 25% interest as Novicki and Lawley's "additional incentive," to enter the deal.

{¶9} The Transfer Agreement contained an integration clause. The clause provided that no provision of the agreement could be modified, amended, or waived except by a written agreement, executed by all the parties.

{¶10} On February 26, 2010, the parties executed the Transfer Agreement. Faith Lawley, LLC paid McKay the purchase price and further paid Granite Creek's capital call. The transfer of the investment unit required Granite Creek's approval, and Faith Lawley, LLC subsequently entered into a separate subscription agreement with Granite Creek. Consequently, the transfer was completed.

{¶11} In September 2012, approximately three months before the expiration of the option, McKay approached Lawley and Novicki to discuss what he called a "tail" agreement. According to McKay, this would be an alternative to exercising the option and would permit him to instead buy back an interest in the Granite Creek unit. On December 17, 2012, McKay emailed Novicki a detailed proposal containing his terms for this proposed "tail" agreement. Novicki responded, said he would call Lawley the following week, and told

---

2. The option price also included a payment to account for certain taxes, and a minimum interest payback of $20,000.

McKay to contact Lawley about setting up a meeting. In a follow-up e-mail, Novicki told McKay to forward the proposal to Lawley. No agreement was reached concerning the "tail" agreement proposal prior to the expiration of the option.

{¶12} It is undisputed that McKay never sent Faith Lawley, LLC written notice of his intent to exercise the option prior to the December 31, 2012 option deadline, or at any other time. Nor did McKay tender the option price to Faith Lawley, LLC at any time. McKay never obtained any written extension of the option deadline from the plaintiffs.

{¶13} Following the expiration of the option deadline, McKay continued to communicate with Novicki and Lawley concerning the proposed "tail" agreement. The parties met for an in-person meeting on January 7, 2013. This meeting became "heated" and the parties left with no agreement in place. According to Lawley, McKay had refused to consider a proposal by the plaintiffs that would require McKay to "back stop" what the plaintiffs had paid into the Granite Creek unit with McKay's stock in a separate company.

{¶14} Over the next three years, McKay continued communicating with Novicki and Lawley concerning potential agreements to buy back into the Granite Creek unit. Many of these discussions were memorialized in e-mails. However, none of McKay's efforts to broker a new deal concerning the Granite Creek unit resulted in any agreement.

{¶15} On May 4, 2016, McKay e-mailed Novicki and Lawley purporting to accept a proposal that they had made to him during the in-person meeting on January 7, 2013 – more than three years earlier. Both Novicki and Lawley quickly responded, repudiating that any offer was available to accept. In Lawley's response, he reminded McKay that in 2013, the Granite Creek unit was not producing any investment return. For that reason, the plaintiffs were only willing to allow McKay to join with them in the investment if he agreed to take on some of the risk. They had asked him to share that risk by putting up his separate company stock, and he had refused. Lawley indicated that Granite Creek had since hit a

"home run" with one of its investments and the unit was starting to produce a return. Therefore, the risk that was present in 2013 was no longer present, and, thus, the deal that the plaintiffs would have potentially considered then was not a possibility in 2016.

## II. Procedural Background

{¶16} McKay, an Illinois resident, filed suit against the plaintiffs in Illinois to "enforce his rights regarding the [Granite Creek] unit * * *." The outcome of the Illinois lawsuit is not apparent from the record.

{¶17} The plaintiffs then filed this lawsuit in Warren County. The plaintiffs' complaint contained a single count for declaratory judgment. The plaintiffs asked the court to declare that McKay was not entitled to any share of the funds he invested in the Granite Creek unit prior to selling it to Faith Lawley, LLC, that McKay was not entitled to any distributions or proceeds from Granite Creek payable to Faith Lawley, LLC, and that McKay was not entitled to any additional compensation from Faith Lawley, LLC.

{¶18} In his amended answer, McKay asserted six counterclaims. Only Count Four and Count Five are relevant to this appeal.[3] Count Four was labeled "estoppel and waiver of limitation of time to execute repurchase option." In it, McKay asserted that the plaintiffs had represented to him that they would pay him "additional consideration" if he were to forbear on exercising his option to repurchase the Granite Creek unit. McKay alleged that the plaintiffs made these representations before and after the option deadline of December 31, 2012. McKay additionally claimed that the plaintiffs represented, before and after December 31, 2012, that they would allow McKay to exercise the option after its expiration

---

3. In Counts One through Three, McKay asserted claims of breach of contract, fraud, and "estoppel barring contract enforcement." These claims relate to McKay's argument that Faith Lawley, LLC was contractually required to obtain Granite Creek's consent to the transfer of the investment unit, and that it had failed to do so. In the summary judgment proceedings, the plaintiffs submitted proof that Granite Creek had approved the transfer. The trial court found likewise. This issue has not been appealed. Count Six was a claim for prejudgment interest, which was dismissed and also has not been appealed.

if the parties did not enter into this "forbearance agreement." McKay asserted that he reasonably relied on these representations and therefore the plaintiffs should be equitably estopped from enforcing the contractual limitation of time to exercise the option.

{¶19} In Count Five, McKay alleged fraud. McKay pled that the plaintiffs falsely represented that they would negotiate with him in good faith regarding paying him to forbear exercising the option and that they misrepresented that they would extend the option deadline in conjunction with ongoing negotiations.

{¶20} The parties filed cross-motions for summary judgment. A magistrate subsequently issued a decision recommending that summary judgment be granted to the plaintiffs. Following McKay's objections, the magistrate's decision was later adopted in full by the trial court.

{¶21} With respects to Counts Four and Five, the decision noted that McKay's amended counterclaim failed to identify any particular statements or communications by the plaintiffs wherein they had made representations concerning paying additional consideration to McKay for forbearing on the option or where they had agreed to extend the option period. The court noted that the only summary judgment evidence that McKay had presented that would indicate that the plaintiffs made any such promises was his "naked" and "self serving" affidavit, which was insufficient to create a genuine issue of material fact. The court determined that no reasonable finder of fact could find that the plaintiffs "sought or desired any forbearance from McKay in exercising his Option, or that they represented the Option Period would be extended if no alternative agreement was reached for McKay to buy in once the Option Period had expired."

{¶22} The court issued a final judgment entry granting the plaintiffs judgment as a matter of law on their request for declaratory judgment. The court dismissed all of McKay's counterclaims.

### III. Law and Analysis

{¶23} McKay raises the following sole assignment of error:

{¶24} THE TRIAL COURT ERRED IN HOLDING THAT MCKAY FAILED TO OFFER EVIDENCE OF MATERIAL FACTS SUFFICIENT TO DEFEAT SUMMARY JUDGMENT OF HIS COUNTERCLAIMS OF ESTOPPEL, WAIVER AND FRAUD.

{¶25} McKay argues that the court erred in granting summary judgment in favor of the plaintiffs on Count Four, promissory estoppel/waiver, and Count Five, fraud. Within his discussion of this assignment of error, McKay presents three "issues" for review.

### A. Standard of Review

{¶26} This court reviews a trial court's summary judgment decision under a de novo standard. *Deutsche Bank Natl. Trust Co. v. Sexton*, 12th Dist. Butler No. CA2009-11-288, 2010-Ohio-4802, ¶ 7. Summary judgment is appropriate under Civ.R. 56 when (1) there is no genuine issue of material fact remaining to be litigated, (2) the moving party is entitled to judgment as a matter of law, and (3) reasonable minds can come to but one conclusion and that conclusion is adverse to the nonmoving party, who is entitled to have the evidence construed most strongly in his favor. *BAC Home Loans Servicing, L.P. v. Kolenich*, 194 Ohio App.3d 777, 2011-Ohio-3345, ¶ 17 (12th Dist.), citing *Zivich v. Mentor Soccer Club, Inc.*, 82 Ohio St.3d 367, 369-370 (1998).

{¶27} The party requesting summary judgment bears the initial burden of informing the court of the basis for the motion and identifying those portions of the record that demonstrate the absence of a genuine issue of material fact. *Dresher v. Burt*, 75 Ohio St.3d 280, 293 (1996). Once a party moving for summary judgment has satisfied its initial burden, the nonmoving party "must then rebut the moving party's evidence with specific facts showing the existence of a genuine triable issue; it may not rest on the mere allegations or denials in its pleadings." *Sexton* at ¶ 7; Civ.R. 56(E).

- 7 -

**B. Promissory Estoppel/Waiver**

**i. Whether McKay's Affidavit Creates a Genuine Issue of Material Fact**

{¶28} In his first issue presented, and with reference to Count Four, promissory estoppel, McKay contends that an averment in his affidavit created a disputed issue of material fact as to whether the plaintiffs promised to extend or waive the Transfer Agreement option deadline.

{¶29} Promissory estoppel is an equitable doctrine for enforcing the right to rely on promises. *A N Bros. Corp. v. Total Quality Logistics, L.L.C.*, 12th Dist. Clermont No. CA2015-02-021, 2016-Ohio-549, ¶ 32. In order to establish a claim for promissory estoppel, a party must establish (1) a clear and unambiguous promise was made, (2) upon which it would be reasonable and foreseeable for the party to rely, (3) actual reliance on the promise, and (4) the party was injured as a result of the reliance. *Id.*

{¶30} McKay's promissory estoppel claim was premised on his allegation that the plaintiffs represented that they would waive the December 31, 2012 option deadline while attempting to negotiate the "tail" agreement. McKay points to the following averment in McKay's own affidavit as establishing a genuine issue of fact on this issue:

> Plaintiffs knew the negotiations were in lieu of McKay exercising the repurchase option. [Excerpt from Eric Novicki Deposition], page 52. Plaintiffs told Defendant both before and after the deadline that Defendant still had the right to repurchase his interest in Granite Creek while the parties negotiated." [*Id.*], page 52, line 1-9 and page 54, line 12-15.

{¶31} Even if we accept these two statements as true, neither statement clearly and unambiguously indicates that the plaintiffs made any promise concerning extending or waiving the option deadline.[4] The first sentence vaguely implies that the plaintiffs were

---

4. We note that any verbal modification to the Transfer Agreement was specifically excluded by the agreement's integration clause. This calls into question whether McKay could *reasonably* rely on a verbal promise to extend the deadline.

aware that McKay intended to negotiate a new agreement instead of exercising the option. The second sentence could be true without the plaintiffs ever having waived or extended the option deadline. The plaintiffs could have independently decided to grant McKay the right to repurchase an interest in the investment, outside of the transfer agreement.

{¶32} The two sentences of the averment cite separate portions of Novicki's deposition testimony. However, upon review, neither cited portion of Novicki's deposition involves any discussion of extending the option deadline. The testimony on page 52 involves Novicki discussing his understanding of a remark Lawley made to him about letting McKay "buy in for cash." Lawley's "buy in for cash" remark was referenced in an e-mail Novicki sent to McKay on January 8, 2013, the day following the unsuccessful meeting between the parties. The e-mail provided in relevant part:

> [McKay],
>
> I think it is better if you and [Lawley] work this out. I worked really hard to even get [Lawley] to the table. His questions and comments to me were "why are we doing anything" and "I will let him buy in for cash[.]"

{¶33} It is not clear from the e-mail when Lawley made the remark to Novicki about being willing to let McKay buy in for cash. In an uncontroverted affidavit submitted in the summary judgment proceedings, Novicki clarified that Lawley made this statement to him *prior* to the Transfer Agreement option deadline.

{¶34} However, McKay argues that because this e-mail was sent *after* the option deadline, the statement implies that Lawley was waiving the deadline. McKay further notes that during Novicki's deposition, Novicki explained that by "buy in for cash," he believed Lawley was referring to the Transfer Agreement's option provision. Thus, according to McKay, Lawley must have extended the option deadline if he was going to let him "buy in for cash" after the option expired.

{¶35} The "buy in for cash" comment does not support McKay's claim that there was a promise of an option extension or waiver. If it is accepted that Lawley stated that McKay could "buy in for cash" prior to December 31, 2012, then this is merely a statement of fact. It was McKay's right under the Transfer Agreement. If Lawley told Novicki that he would allow McKay to "buy in for cash," and meant after December 31, 2012, then this merely reflects ongoing negotiations regarding McKay's continued interest in obtaining an interest in the Granite Creek unit. Moreover, any statement or conduct occurring after the option deadline would be irrelevant to McKay's promissory estoppel claim.

{¶36} We next turn to McKay's citation to testimony on page 54 of Novicki's deposition. The cited testimony consists of McKay's attorney asking Novicki if he agreed with Lawley's statement about allowing McKay to buy in for cash. Novicki explained that it did not matter if he agreed or not, because (as was just discussed), this was McKay's right under the Transfer Agreement.

{¶37} Consequently, to the extent McKay's affidavit averment vaguely suggests the extension or waiver of the Transfer Agreement option, it appears unsupported by the very testimony that McKay cited. A party's unsupported and self-serving assertions, offered by way of affidavit, standing alone and without corroborating materials under Civ.R. 56, will not be sufficient to demonstrate material issues of fact. *Hillstreet Fund III, L.P. v. Bloom*, 12th Dist. Butler No. CA2009-07-178, 2010-Ohio-2961, ¶ 10.

{¶38} Other evidence in the record supports the conclusion that the plaintiffs made no promises to extend the option deadline and instead merely agreed to listen to McKay's alternative proposal. According to Novicki, the reason that McKay approached the plaintiffs about the "tail" agreement was that McKay could not afford to exercise the option. Novicki testified:

McKay came to me [some time before September 24, 2012] and

- 10 -

said, I can't perform on the contract. I don't have the money to do it. I can't perform on the contract. Is there a way that we can modify or change the agreement or a way for me to get back in the interest? And I said, well, I don't know. Let me talk to [Lawley].

I talked to [Lawley] and his response was, why would I give him our money? And I said, I agree, it doesn't make any sense. And I said, but [McKay] thinks he has some proposals that will make sense and maybe we should listen to him and see what he's got to propose. So [Lawley] agreed to that and that's where we were at.

{¶39} Shortly before the option would expire, McKay e-mailed Novicki on December 17, 2012. This e-mail appeared to memorialize the terms of McKay's proposed "tail" agreement and included a very detailed summary of the proposal. However, McKay never mentioned the option. He did not discuss extending the option period. He never mentioned any proposal to "forbear" exercising the option. Nor was there any explanation of how the plaintiffs paying McKay to forbear would provide the plaintiffs with any benefit. McKay did not state he was prepared to exercise the option if the plaintiffs did not agree to this "tail" agreement. And there was no reference in the e-mail to any promises made by Novicki or the plaintiffs towards McKay. The e-mail was simply McKay's proposal to the plaintiffs.

{¶40} Perhaps most notably, the record contains an e-mail McKay sent to Novicki in February 2013, again indicating his desire to make some deal with regard to the Granite Creek unit. In it, he referred back regretfully to the January 7, 2013 meeting and indicated he would like to "resolve something we could both live with and move forward with our friendship." He mentioned his desire to "claw back for a little bit before you take the rest" and indicated he thought it was fair to ask for "a bone, only after you make a good return." McKay then stated, "Propose whatever you want – *I know my contract rights are gone*." (Emphasis added.) This statement flatly contradicts McKay's affidavit averments made nearly seven years later.

{¶41} The evidence submitted in this case reflects that prior to the option deadline, McKay was not in a financial position to exercise the option. Or, for reasons that are not clear from the record, McKay did not want to exercise the option but wanted to partner with the plaintiffs on the investment. Regardless, it is clear that McKay was still seeking some way to "get back in the interest." While the plaintiffs were dubious that McKay could propose anything that they would be interested in, they were willing to listen to his proposal. Otherwise, as stated by Lawley, McKay could "buy in for cash." We agree that the averment in McKay's affidavit is unsupported by the summary judgment evidence and insufficient to create a genuine issue of material fact.

{¶42} In support of the contention that his affidavit was not "self-serving" and was sufficient to preclude summary judgment, McKay cites Judge Ringland's concurring opinion in *Hillstreet Fund*, 2010-Ohio-2961. There, Judge Ringland distinguished cases where defendants submitted affidavits generally denying liability or contesting their involvement in an event from those cases where a party describes the statement against interest of an opposing party. *Id.* at ¶ 17-18. *Hillstreet* is distinguishable and does not support McKay's argument. In *Hillstreet*, the affidavit describing the admission against interest specifically identified the person who made the statement and described the person's statement. *Id.* at ¶ 18. McKay's affidavit is far less detailed. It failed to specifically identify who made the promises regarding the option deadline and only vaguely described what statements were made. Moreover, McKay's affidavit is uncorroborated and contradicted by other evidence in the record.

{¶43} We agree with the plaintiffs' suggestion that this case is more similar to *Citibank v. Eckmeyer*, 11th Dist. Portage No. 2008-P-0069, 2009-Ohio-2435. There, Citibank sued the appellant for approximately $20,000 as a result of a default on a credit card agreement. *Id.* at ¶ 2. The appellant submitted his affidavit in which he averred that

he contacted Citibank to negotiate a settlement and that Citibank had agreed to settle the account for $7,000. *Id.* at ¶ 59. The court of appeals concluded that the affidavit was self-serving, failed to identify the individual whom the appellant claimed to have contacted, and failed to establish whether that person had any authority to settle the debt. In addition, the court noted that the appellant had conceded receiving a letter rejecting his offer to settle the account. *Id.* Like the present case, the affidavit in *Citibank* set forth an alleged admission by a party opponent, but was unsupported by any other evidence, and failed to identify the individual alleged to have made the statement.

{¶44} In sum, McKay has failed to point to specific facts in the summary judgment record evidencing a clear and unambiguous promise made by the plaintiffs to McKay concerning the option. There are no disputed issues of material fact precluding summary judgment. Consequently, we find no merit in McKay's first issue presented for review.

### ii. Evidence of Waiver

{¶45} In McKay's second issue presented, he argues that "a party's affidavit testifying to statements of a party opponent and accompanying evidence of the opposing party's conduct are admissible evidence of a claim of waiver." Initially, we observe that waiver is not a claim; it is an affirmative defense. *Miller v. Wikel Mfg. Co.*, 46 Ohio St.3d 76, 78 (1989). Waiver is a "voluntary relinquishment of a known right. It may be made by express words or by conduct which renders impossible a performance by the other party, or which seems to dispense with complete performance at a time when the obligor might fully perform." *List & Son Co. v. Chase*, 80 Ohio St. 42, 49 (1909). Waiver must be "intentional, with knowledge of the facts and of the party's rights." *Id.* at 51.

{¶46} As set forth above, there was no evidence presented of any intentional waiver of the option deadline by the plaintiffs. The plaintiffs' agreement to listen to McKay's proposal or negotiate an alternative agreement does not constitute a waiver of any right

under the Transfer Agreement. And as explained above, the evidence regarding allowing McKay to "buy in for cash" also does not set forth any grounds for waiver. McKay argues that the trial court ignored evidence of waiver, but in each instance cited by McKay, the evidence was discussed and sufficiently addressed by the court. McKay's arguments concerning waiver lack merit.

## C. Fraud

{¶47} In his third issue presented for review, McKay argues that his affidavit created a genuine issue of material fact as to his fraud claim. McKay incorporates the same arguments he presented with respect to his promissory estoppel claim. For the same reasons described previously, McKay failed to present evidence of any representation by the plaintiffs concerning extending the option period. Accordingly, he has failed to identify a genuine disputed issue of fact for trial as to any misrepresentation in conjunction with the fraud claim.

{¶48} For the foregoing reasons, we overrule McKay's sole assignment of error and affirm the trial court's decision dismissing McKay's counterclaims and granting the declaratory judgment requested by the plaintiffs.

{¶49} Judgment affirmed.

M. POWELL, P.J., and HENDRICKSON, J., concur.