[Cite as *Guzzetta v. Guzzetta*, 2024-Ohio-294.]

IN THE COURT OF APPEALS

TWELFTH APPELLATE DISTRICT OF OHIO

BUTLER COUNTY


| | | |
|---|---|---|
| SUSAN GUZZETTA, et al., | : | |
| Appellants, | : | CASE NOS. CA2023-06-064<br>CA2023-07-084 |
| | : | |
| - vs - | : | O P I N I O N<br>1/29/2024 |
| | : | |
| ROBERT GUZZETTA, et al., | : | |
| Appellees. | : | |


CIVIL APPEAL FROM BUTLER COUNTY COURT OF COMMON PLEAS
Case No. CV 2019 07 1397


Barron, Peck, Bennie & Schlemmer, LPA, and Steven C. Davis, Charles L. Hinegardner, and Sarah M. Houseman, for appellants Susan Guzzetta and Bryce Guzzetta.

Dickinson Wright PLLC, and Jonathan R. Secrest, David A. Lockshaw, Jr., and Manuel D. Cardona, for appellee Jackson National Life Insurance Company.


**S. POWELL, P.J.**

{¶ 1} Appellants, Susan Guzzetta and Bryce Guzzetta, appeal the decision of the Butler County Court of Common Pleas granting summary judgment in favor of appellee, Jackson National Life Insurance Company ("Jackson"), in this case in which they allege an interference with their inheritance. For the reasons outlined below, we affirm the trial

court's decision.

## Introduction

{¶ 2}   Susan and Bryce are descendants of Dr. Franklin H. Guzzetta, who passed away on March 3, 2019.  Franklin, a long-time resident of Butler County, Ohio, was 85 years old at the time of his passing.  Franklin was survived by his wife, Fay, as well as his two adult children, and his three adult grandchildren.  Susan is one of Franklin's two surviving adult children, whereas Bryce is one of Franklin's three surviving adult grandchildren.[1]  There is no dispute that Franklin suffered from memory loss, late-stage dementia, and Alzheimer's disease in the approximate two years leading to his death.  There is also no dispute that, prior to the onset of those conditions, a power of attorney was executed that included Franklin's notarized signature and driver's license naming his other surviving adult child, Susan's brother and Bryce's uncle, Robert Guzzetta, as his primary agent.

{¶ 3}   During his lifetime, Franklin established five annuity accounts with Jackson.[2]  The five accounts Franklin established with Jackson were given the last four digits of 8529, 4991, 9876, 4501, and 5850.  There is no dispute that, on the applications executed by Franklin to establish each of those five accounts, Franklin checked a box authorizing Jackson "to accept fund transfers/allocation changes via telephone, internet, or other electronic medium" from either himself or his then financial representative, Kevin Flynn, "subject to Jackson's administrative procedures."  There is also no dispute that Jackson included on each of the five applications Franklin executed a provision that stated, in pertinent part, the following:

---

1.  Susan is Bryce's mother.

2. Franklin applied for the five annuity accounts he ultimately established with Jackson in the approximately three-and-one-half years between December 4, 2009 and July 8, 2013.

> Jackson has administrative procedures that are designed to provide reasonable assurances that telephone/electronic authorizations are genuine. If Jackson fails to employ such procedures, it may be held liable for losses resulting from a failure to use such procedures.

**{¶ 4}** The record indicates that Susan and Bryce were, at one time or another, some of the intended beneficiaries of the five annuity accounts Franklin had established with Jackson. This case involves Susan's and Bryce's challenge to various asset transfers from those five accounts purportedly made by their brother and uncle, Robert.[3] Despite the record indicating Franklin had authorized Jackson to release account information to Robert some five years prior to his death, Susan and Bryce allege that the various asset transfers Robert supposedly made from Franklin's accounts were fraudulent and that Jackson was complicit in such fraud. This is because, as Susan and Bryce later alleged as part of their summary judgment motion, Jackson "recklessly ignored and disregarded their own policies and procedures," as well as Robert's "obvious forgeries, impersonations and countless red flags of impropriety," thereby allowing Robert to fraudulently receive over a million dollars in Franklin's assets despite Jackson being "appropriately situated to safeguard and protect the estates of their customers" against such acts.

### Facts and Procedural History

**{¶ 5}** On September 30, 2021, Susan and Bryce (hereinafter, the "Guzzettas") filed a complaint naming Jackson as a defendant.[4] The Guzzettas' complaint contained

---

3. There are a total of 26 transfers at issue, 21 of which occurred during Franklin's lifetime, with the other five being triggered as a result of Franklin's death.

4. The complaint filed by the Guzzettas on September 30, 2021 was their second amended complaint and the first that named Jackson as a defendant. The filing contains 1,197 numbered paragraphs over 147 pages, plus exhibits. For ease of discussion, we will refer to this filing within this opinion as "complaint" rather than "second amended complaint."

several causes of action spread across 18 separate counts. These causes of action included, but were not limited to, allegations of fraud, unjust enrichment, conversion, breach of contract, intentional spoliation of evidence, negligent misrepresentation, and theft. These claims, to the varying degrees in which they were pled, were brought against several different individuals and the numerous financial institutions Franklin had done business with prior to his death. Besides Jackson, this also included Susan's brother and Bryce's uncle, Robert, Robert's two adult children, John Guzzetta and Ann Sarah Guzzetta, as well as MidUSA Credit Union, JP Morgan Chase Bank, PNC Bank, Prudential Insurance, and Northwestern Mutual Insurance.

**{¶ 6}** Of those 18 separate counts, the Guzzettas set forth several causes of action targeting Jackson by name. This included Count 4, conversion, in paragraphs 1001 through 1009, Count 14, negligence, in paragraphs 1116 through 1123, and Count 18, a cause of action the Guzzettas' entitled "Bad Faith," in paragraphs 1171 through 1176. The most significant of those causes of action, however, was set forth in Count 13, breach of contract, which stated, in its entirety, the following:

### <u>COUNT XIII</u>

(Breach of Contract)

1073. Plaintiffs reallege the above allegations as if fully rewritten herein.

1074. Franklin Guzzetta had five valid contracts with Jackson.

1075. Plaintiffs were intended beneficiaries of Franklin's Jackson Accounts.

1076. Jackson owed a duty of good faith and fair dealing to Franklin, Plaintiff, Susan Guzzetta, and Plaintiff, Bryce Guzzetta.

1077. Jackson breached this duty when it allowed an unauthorized user to make unauthorized transfers and

changes to Franklin's accounts, to Plaintiffs (sic) detriment.

1078. Plaintiffs incurred damages resulting proximately from Jackson's breaches.

{¶ 7} On December 15, 2021, Jackson filed a Civ.R. 12(B)(6) motion to dismiss the Guzzettas' various claims levied against it, including the Guzzettas' breach of contract claim. That rule authorizes the dismissal of a complaint if the complaint fails to state a claim upon which relief can be granted. To support its motion, Jackson argued, among other things, that the Guzzettas had "failed to plead a sufficient breach of contract claim" anywhere within their complaint that would entitle the Guzzettas to relief. More precisely, Jackson argued that the Guzzettas had "failed to state a cognizable claim for breach of contract on a violation of the duty of good faith and fair dealing," thereby necessitating their complaint be dismissed given the lack of any specificity regarding what contractual provision(s) it had supposedly breached. Jackson supported this argument by claiming that, rather than a breach of contract, the Guzzettas' complaint did nothing more than make a general assertion that it had breached its duty of good faith and fair dealing by "allowing an unauthorized user to make unauthorized transfers and changes to Franklin Guzzetta's account" and "fail[ing] to have adequate policies or training to prevent Robert Guzzetta's transfers."

{¶ 8} On March 31, 2022, the trial court issued a decision that granted Jackson's Civ.R. 12(B)(6) motion to dismiss all claims levied against it by the Guzzettas, "but for Plaintiffs' claims for breach of contract." In so holding, the trial court determined that the Guzzettas had "set forth at least sufficient operative facts to support" a breach of contract claim against Jackson. The trial court determined this to be the case even though the Guzzettas had used "the duty of good faith and fair dealing" phrasing within their complaint when setting forth that claim. In reaching this decision, the trial court stated, in

pertinent part, the following:

> [T]he context clearly demonstrates that Plaintiffs were relying upon promises made by Jackson when Franklin opened his accounts, to wit: that "Jackson has administrative procedures that are designed to provide reasonable assurances that telephone/electronic authorizations are genuine. If Jackson fails to employ such procedures, it may be held liable for losses resulting from a failure to use such procedures…" When Plaintiffs further alleged Jackson breached its duty when it "allowed an unauthorized user to make unauthorized transfers and changes" to the accounts—although unartful— they have undoubtedly set forth a claim for breach of contract, sufficiently enough that Jackson has notice of the actions for which Plaintiffs are seeking redress.

**{¶ 9}** On April 22, 2022, Jackson filed its answer as to the Guzzettas' breach of contract claim making a general, blanket denial of any wrongdoing. This included Jackson generally denying the Guzzettas' allegations set forth in Count 13 of their complaint reproduced above. Several weeks later, on May 10, 2022, Jackson moved the trial court to reconsider its decision to deny its Civ.R. 12(B)(6) motion to dismiss. The trial court denied Jackson's motion for reconsideration in an entry dated June 2, 2022. In so doing, the trial court determined that, given the nature of the proceedings thus far, "any issues of liability" would be better suited for decision "in summary judgment proceedings as may be appropriate."

**{¶ 10}** On April 3, 2023, the Guzzettas and Jackson filed competing motions for summary judgment in accordance with Civ.R. 56. Given what the trial court had previously held in its March 31, 2022 decision denying Jackson's Civ.R. 12(B)(6) motion to dismiss, these summary judgment motions were directed primarily towards the Guzzettas' breach of contract claim, with some ancillary discussion regarding the Guzzettas' other, subsumed claim alleging a breach of good faith and fair dealing. On June 12, 2023, the trial court issued a decision granting summary judgment in favor of

Jackson on the Guzzettas' breach of contract and a breach of good faith and fair dealing claims.   In so holding, the trial court determined that the Guzzettas' memorandum in opposition to Jackson's summary judgment motion had failed to "meet their burden of reciprocity" required by Civ.R. 56.

{¶ 11} On June 15, 2023, the Guzzettas filed a notice of appeal from the trial court's June 12, 2023 decision.  This appeal was assigned Case No. CA2023-06-064. Shortly thereafter, on June 23, 2023, the trial court issued an order transferring the case to the Butler County Probate Court for further proceedings.  In so doing, the trial court explained that this transfer was done "for the express purpose of determining whether Plaintiffs have any adequate relief that must be exhausted in that forum as set forth herein," and, based upon that finding, "whether any part of this action should be concluded there, as well."

{¶ 12} On June 28, 2023, the Guzzettas filed an affidavit of disqualification with the Ohio Supreme Court requesting a visiting judge be appointed to oversee the remainder of the case.  The Guzzettas filed this affidavit due to the Butler County probate court judge having previously represented Susan's brother and Bryce's uncle, Robert, in this action prior to his election to the bench.  Two days later, on June 30, 2023, the Ohio Supreme Court issued an entry that removed "any authority" of the probate court judge, and all other Butler County trial court judges, "to preside in the proceeding until the Chief Justice rules on the [Guzzettas' affidavit of disqualification]."  That same day, also on June 30, 2023, the trial court issued an amended nunc pro tunc decision to add Civ.R. 54(B) language certifying that there was no just reason for delay that it had "inadvertently" omitted from its decision.

{¶ 13} On July 21, 2023, the Guzettas filed a notice of appeal from the trial court's

June 30, 2023 amended nunc pro tunc decision. This appeal was assigned Case No. CA2023-07-084. This court subsequently issued an order on August 8, 2023, sua sponte consolidating the Guzzettas' two appeals upon finding "both appeals involve the same subject matter, and that judicial economy will be served by consolidation." Within that same order, this court also denied the Guzzettas' motions requesting this court remand the cases to the trial court due to an alleged lack of jurisdiction. In so doing, this court determined that, although presenting an interesting issue that may warrant further discussion, this court nevertheless had "jurisdiction over both of these appeals at the present time," thereby absolving any need for this court to remand the case "based upon lack of jurisdiction."

{¶ 14} On December 18, 2023, oral argument was held before this court. The Guzzettas' appeal now properly before this court for decision, the Guzzettas have raised one assignment of error for review.

**The Guzzettas' Single Assignment of Error**

{¶ 15} THE TRIAL COURT ERRED IN ENTERING ITS AMENDED NUNC PRO TUNC ENTRY DENYING PLAINTIFFS' MOTION FOR SUMMARY JUDGMENT AS TO DEFENDANT JACKSON NATIONAL LIFE INSURANCE COMPANY AND GRANTING DEFENDANT JACKSON NATIONAL LIFE INSURANCE COMPANY'S MOTION FOR SUMMARY JUDGMENT.

{¶ 16} In their single assignment of error, the Guzzettas argue the trial court erred by granting summary judgment in favor of Jackson on their breach of contract and breach of good faith and fair dealing claims.

*Summary Judgment Standard of Review*

{¶ 17} "Summary judgment is a procedural device used to terminate litigation when

- 8 -

there are no issues in a case requiring a formal trial." *Franchas Holdings, LLC v. Dameron*, 12th Dist. Clermont No. CA2015-09-073, 2016-Ohio-878, ¶ 16. "This court reviews a trial court's summary judgment decision under a de novo standard." *Faith Lawley, LLC v. McKay*, 12th Dist. Warren No. CA2020-08-052, 2021-Ohio-2156, ¶ 26. This includes both the trial court's decision to grant a motion for summary judgment, as well as the trial court's decision to deny a motion for summary judgment. *Holtrey v. Wiedeman*, 12th Dist. Warren No. CA2023-01-011, 2023-Ohio-2440, ¶ 12. De novo review means that this court uses the same standard the trial court should have used. *Brock v. Servpro*, 12th Dist. Butler No. CA2021-06-075, 2022-Ohio-158, ¶ 29. That is to say, "[i]n de novo review, we independently review trial court decisions and give them no deference." *Frost v. Evenflo Co.*, 2d Dist. Miami No. 2022-CA-29, 2023-Ohio-4561, ¶ 29. When an error is found in a trial court's decision granting a summary judgment motion, the trial court's decision is generally reversed and the matter is remanded to the trial court for further proceedings. *See, e.g., Ginn v. Stonecreek Dental Care*, 12th Dist. Fayette No. CA2016-10-014, 2017-Ohio-4370, ¶ 41 ("the judgment of the trial court granting summary judgment in favor of [defendant-appellee] is reversed, and the matter is remanded for further proceedings * * *").

*Summary Judgment Review Pursuant to Civ.R. 56*

{¶ 18} "Civ.R. 56 sets forth the summary judgment standard." *State ex rel. Becker v. Faris*, 12th Dist. Clermont No. CA2020-10-058, 2021-Ohio-1127, ¶ 14. "Pursuant to that rule, a court may grant summary judgment only when (1) there is no genuine issue of any material fact, (2) the moving party is entitled to judgment as a matter of law, and (3) the evidence submitted can only lead reasonable minds to a conclusion that is adverse to the nonmoving party." *Spitzer v. Frish's Restaurants, Inc.*, 12th Dist. Butler No.

CA2020-12-128, 2021-Ohio-1913, ¶ 6. "An issue is genuine only if the evidence is such that a reasonable jury could find for the non-moving party." *Abbuhl v. Orange Vill.*, 8th Dist. Cuyahoga No. 82203, 2003-Ohio-4662, ¶ 14. "A material fact is one which would affect the outcome of the suit under the applicable substantive law." *Hillstreet Fund III, L.P. v. Bloom*, 12th Dist. Butler No. CA2009-07-178, 2010-Ohio-2961, ¶ 9, citing *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 106 S.Ct. 2505 (1986).

{¶ 19} "The moving party bears the initial burden of informing the court of the basis for the motion and demonstrating the absence of a genuine issue of material fact." *Berkheimer v. REKM, LLC*, 12th Dist. Butler No. CA2022-03-026, 2023-Ohio-116, ¶ 18, citing *Dresher v. Burt*, 75 Ohio St.3d 280, 292 (1996). "Once this burden is met, the nonmoving party has a reciprocal burden to set forth specific facts showing there is some genuine issue of material fact yet remaining for the trier of fact to resolve." *Sullivan v. Mercy Health*, 12th Dist. Butler No. CA2022-02-023, 2022-Ohio-4445, ¶ 21. That is to say, the nonmoving party may not simply rest on "the mere allegations or denials in its pleadings." *Deutsche Bank Natl. Trust Co. v. Sexton*, 12th Dist. Butler No. CA2009-11-288, 2010-Ohio-4802, ¶ 7, citing Civ.R. 56(E). "Summary judgment is proper if the nonmoving party fails to set forth such facts." *Taylor v. Atrium Med. Ctr.*, 12th Dist. Warren No. CA2018-07-074, 2019-Ohio-447, ¶ 10. "In determining whether a genuine issue of material fact exists, the evidence must be construed in favor of the nonmoving party." *Assured Admin., LLC v. Young*, 12th Dist. Warren No. CA2019-04-039, 2019-Ohio-3953, ¶ 14.

*The Guzzettas' Arguments and Analysis*

{¶ 20} The Guzzettas raise a litany of issues in support of their single assignment of error. Among them, the Guzzettas argue that rather than the summary judgment

standard of review set forth above, this case instead calls for the standard of review generally reserved for motions to dismiss brought pursuant to Civ.R. 12(B)(6). However, despite the Guzzettas' attempts to recast the relevant issues subject to this appeal, after a full and thorough review of the record, and when applying the necessary de novo standard of review to the case at bar, we find no error in the trial court's decision to grant summary judgment in favor of Jackson on the Guzzettas' breach of contract claim. This is because, as set forth more fully below, the trial court's decision was proper given the applicable Civ.R. 56 motion for summary judgment standard.

{¶ 21} In its summary judgment motion, Jackson argued that it was entitled to judgment on the Guzzettas' breach of contract claim because "there is simply no evidence to suggest the disbursements Jackson made breached any contractual obligations." This included, most notably, the contractual provision set forth above that:

> Jackson has administrative procedures that are designed to provide reasonable assurances that telephone/electronic authorizations are genuine. If Jackson fails to employ such procedures, it may be held liable for losses resulting from a failure to use such procedures.

{¶ 22} To support this claim, Jackson argued that rather than creating a genuine issue of material fact as to whether it had committed a breach of contract, the evidence instead clearly demonstrated that it was "obligated by contract to make disbursements requested by the contract holder," Franklin, many of which Jackson argued it had received directly from Franklin himself, either orally or in writing. This included several transactions that were accompanied by a medallion signature guarantee indicating the signature purporting to be Franklin's was genuine.[5] Jackson noted that the same was true as it

---

5. "A medallion signature guaranty is similar to a notary." *Nova Leasing, LLC v. McMillan*, Dist. Ct. of Colorado, Denver County, 2017 Colo. Dist. LEXIS 737, *3 (Oct. 6, 2017). "Medallion signature guarantees

related to the various change in death benefits and beneficiary designations that Franklin had made to his accounts prior to his death. Therefore, because it was doing nothing more than following through on the requests that Franklin himself had made, something which it did after employing and/or using its administrative procedures designed to provide reasonable assurances that telephone/electronic authorizations from Franklin were, in fact, genuine, Jackson argued that, as a matter of law, it was entitled to judgment on the Guzzettas' breach of contract claim.

{¶ 23} The Guzzettas responded to Jackson's summary judgment motion by arguing that the oral and written authorizations Franklin had supposedly provided to Jackson were, in actuality, "largely the product of forgery and impersonation" by his son, Robert, and not "genuine and authentic" requests made by Franklin. However, even assuming this were true, the Guzzettas provided no evidence to demonstrate how this fact, standing alone, constituted a breach of contract on the part of Jackson that would entitle them to relief. That is to say, outside of their own speculation and conjecture as to what they believe Jackson should have done to combat against Robert's purported fraud, which, as set forth in their complaint, included Jackson conducting a full blown investigation into the area codes and IP addresses from which Franklin's telephone and internet activity had supposedly originated, the Guzzettas provided no evidence to indicate that Jackson had not employed and/or used the administrative procedures it had in place to provide reasonable assurances that the telephone/electronic authorizations it received from Franklin were genuine. That Jackson may have been wrong in its determination is immaterial, so long as Jackson acted in conformance with its contractual

are used in the securities industry to verify the identity and authority of the owner or other transferor of stock certificates and stock powers." *Id.* at *3, fn. 2. A medallion signature guarantee "is an industry accepted guarantee intended to convey that the customer signature is authentic." *Floyd v. Hill*, 495 B.R. 646, 663, 2013 Bankr. LEXIS 3308, *43 (Aug. 12, 2013).

obligations, it cannot be said that Jackson committed a breach of contract. To the extent the Guzzettas claim otherwise, such an argument lacks merit.

{¶ 24} For these reasons, we find no error in the trial court's decision granting summary judgment to Jackson on the Guzzettas' breach of contract claim. Whether Robert may have engaged in fraud is a question of fact for the Guzzettas' claims against Robert, not Jackson. We also find no error in the trial court's decision granting summary judgment to Jackson on Guzzettas' claim alleging a breach of good faith and fair dealing. The duty of good faith and fair dealing is integral to any contract. *Krukrubo v. Fifth Third Bank*, 10th Dist. Franklin 07AP-270, 2007-Ohio-7007, ¶ 19. "Outside of the insurance context, the breach of this duty does not exist as a separate cause of action from a breach of contract claim." *Ireton v. JTD Realty Invs., LLC*, 12th Dist. Clermont No. CA2010-04-023, 2011-Ohio-670, ¶ 51. "'Rather, the action arises from the duty of good faith and fair dealing inherent in every contract and cannot stand alone from the contract claim.'" *Adena at Miami Bluffs Condo Owners' Assoc. v. Woodward*, 12th Dist. Warren No. CA2020-08-044, 2021-Ohio-3872, ¶ 29, quoting *Walton v. Residential Fin. Corp.*, 151 Ohio Misc.2d 28, 2009-Ohio-1872, ¶ 10 (C.P.). Therefore, because the Guzzettas' breach of contract claim must fail, so too must the Guzzettas' claim alleging a breach of good faith and fair dealing. The Guzzettas' claim otherwise lacks merit.

**The Guzzettas' Renewed Motions to Remand Their Appeals**

{¶ 25} Within their appellate brief, the Guzzettas have requested this court revisit our August 8, 2023 decision denying their motions to remand their appeals to the trial court due to this court's alleged lack of jurisdiction for want of a final appealable order. We decline the Guzzettas' renewed request. We instead reiterate our previous decision and find, once again, that "[t]his court has jurisdiction over both of these appeals at the

present time and declines to remand them based upon lack of jurisdiction." The fact that the trial court issued its amended nunc pro tunc decision subject to this appeal after the Ohio Supreme Court filed its entry removing "any authority" of the Butler County probate court judge, and all other Butler County trial court judges, "to preside in the proceeding until the Chief Justice rules on the [Guzzettas' affidavit for disqualification]," is of no consequence.[6]

{¶ 26} In reaching this decision, we note that it is well established that a trial court has inherent common law authority to correct errors, nunc pro tunc, so that the record speaks the truth. *See Natl. Life Ins. Co. v. Kohn*, 133 Ohio St. 111, 113 (1937) ("courts possess inherent common-law power to enter judgments or orders nunc pro tunc in proper cases"). "Errors subject to correction by the court include a clerical error, mistake, or omission that is mechanical in nature and apparent on the record and do not involve a legal decision or judgment." *Gauthier v. Gauthier*, 12th Dist. Warren Nos. CA2018-09-098 and CA2018-09-099, ¶ 70, citing *State v. Miller*, 127 Ohio St.3d 407, 2010-Ohio-5705, ¶ 15. The record in this case is clear that the trial court's failure to include a Civ.R. 54(B) language certifying that were was no just reason for delay within its original June 12, 2023 decision was a clerical error. The trial court specifically stated as much in the amended nunc pro tunc decision filed on June 30, 2023. Therefore, because the trial court was doing nothing more than correcting a clerical error by issuing an amended nunc pro tunc decision in this case, the Guzzettas argument that this court lacks jurisdiction to rule on their appeals lacks merit.

## Conclusion

---

6. The Ohio Supreme Court's entry and trial court's amended nunc pro tunc decision were both issued on the same day, June 30, 2023. Neither document, however, sets forth the exact time of day in which it was filed. Nevertheless, because it does not impact this court's decision, we will presume for the sake of argument that the trial court's amended nunc pro tunc decision was filed after the Ohio Supreme Court's entry.

{¶ 27} For the reasons outlined above, and in conformance with this court's de novo standard of review, we overrule the Guzzettas' single assignment of error and affirm the trial court's decision granting summary judgment to Jackson.

{¶ 28} Judgment affirmed.

PIPER and M. POWELL, JJ., concur.