[Cite as *Hubbard v. Weber*, 2026-Ohio-1416.]

IN THE COURT OF APPEALS

TWELFTH APPELLATE DISTRICT OF OHIO

CLERMONT COUNTY

| | | |
|---|---|---|
| VERNON HUBBARD, et al., | : | CASE NO. CA2024-11-085 |
| Appellees, | : | |
| | : | OPINION AND JUDGMENT ENTRY 4/20/2026 |
| - vs - | : | |
| | : | |
| LENNY WEBER, et al., | : | |
| Appellants. | : | |

CIVIL APPEAL FROM CLERMONT COUNTY COURT OF COMMON PLEAS
Case No. 2023 CVH 1271

Durkee and Uhle, L.L.C., and Richard B. Uhle, Jr., for appellees.

Pierson Ferdinand L.L.P., and Matthew S. Parrish, for appellants.

## O P I N I O N

**BYRNE, P.J.**

{¶ 1}   This appeal arose from a home remodeling project construction dispute. Leonard Weber and Sandra Davis appeal from the decision of the Clermont County Court of Common Pleas, General Division, that granted summary judgment in favor of Vernon and Meredith Hubbard. For the foregoing reasons, we reverse and remand for further

proceedings.

## I. Factual and Procedural Background

### A. The Contract

{¶ 2}   Vernon and Meredith Hubbard ("the Homeowners") entered a written contract with "TFB Development, LLC dba LS Contractors" ("TFB"). The contract referred to TFB Development as the "Contractor" and "Vern & Meredith Hubbard" as the "Customers." The contract listed Weber as the "President, Owner" of TFB.

{¶ 3}   The contract detailed the scope of work for a home remodeling project to be performed at the Homeowners' home and set the total project cost at $99,683. Section 7 of the contract set forth an integration clause as follows:

> **7. Entire Agreement.** This document reflects the entire agreement between the Parties and reflects a complete understanding of the Parties with respect to the subject matter. This Contract supersedes all prior written and oral representations. The Contract may not be amended, altered, or supplemented except in writing signed by both the Contractor and the Customer.

{¶ 4}   On the final page of the contract, Vernon Hubbard signed as "Customer" and Weber signed as "Contractor." Davis was not mentioned anywhere in the contract and did not sign the contract.

### B. The Work

{¶ 5}   The timeline of the remodeling work is unclear from the limited information in the record. However, construction work was performed, and the Homeowners alleged poor workmanship, deviations from agreed-upon plans, and unauthorized payment demands.

### C. The Complaint and Summary Judgment

{¶ 6}   The Homeowners filed a complaint against TFB, Weber, and Davis in the Clermont County Court of Common Pleas. The complaint asserted claims for (1) breach

of contract and (2) violations of the Ohio Consumer Sales Practices Act ("CSPA"). The complaint asserted that Weber and Davis were the "real parties in interest," not TFB, and made factual averments in support of this assertion.

{¶ 7} TFB, Weber, and Davis did not file an answer. However, Weber filed a letter with the court stating that TFB had been dissolved as of the day before the filing of the complaint and was "insolvent with no assets." A Certificate of Dissolution, on its face purporting to have been filed with the Ohio Secretary of State, was attached to Weber's letter.

{¶ 8} The Homeowners eventually moved for summary judgment on their breach of contract claim, requesting that judgment be entered against the three defendants jointly and severally. The Homeowners made no argument as to how Weber and Davis were individually liable; instead, the motion focused on the claimed deficiencies in the work performed on their house. For summary judgment evidence, the motion relied on factual assertions made in an affidavit signed by Vernon Hubbard.

{¶ 9} In the affidavit, Vernon Hubbard stated the following regarding his belief as to who he and Meredith had contracted with:

> We entered into a contract with . . . Weber and . . . Davis for an addition and other construction services. . . . Weber signed the contract under the title "Contractor." [Weber] told us he and his wife [Davis] were the owners and principals doing business as LS Contractors. They said [Davis] was project manager and [Weber] was the general contractor. We did not think we were doing business with a corporation or that there was any limitation of their personal liability. A true copy of the signed contract is attached.

{¶ 10} Vernon's affidavit then described deficiencies with the work performed on the home, including a misaligned foundation, an improperly-sloped shower floor, and numerous defects requiring major demolition and rebuilding. Vernon stated that he and Davis "believed" that $108,000 was a "fair estimate" of their damages resulting from the

construction deficiencies.

{¶ 11} The court scheduled a hearing on the motion for summary judgment. One day before the hearing, Weber and Davis filed pro se motions, captioned as motions to dismiss. In her "motion to dismiss," Davis asserted she was not involved with TFB and had never been employed or paid by TFB. In his "motion to dismiss," Weber requested a continuance to obtain legal representation but stated no grounds for dismissal or any substantive argument.

{¶ 12} The court then held the hearing on the Homowners' motion for summary judgment. Neither Weber nor Davis appeared. At the hearing, the Homeowners' counsel made no explicit argument as to why Weber and Davis should be held individually liable. The trial court orally granted summary judgment in favor of the Homeowners on their breach of contract claim, awarding them a judgment of $108,000 against Weber, Davis, and TFB, jointly and severally, plus interest and costs. To be clear, the trial court held Weber and Davis *individually liable*, in addition to holding TFB liable. The court then issued a written entry granting summary judgment and a certificate of judgment in the amount of $108,000.

{¶ 13} Less than a month later, newly-retained counsel for Weber and Davis entered an appearance and moved to vacate the certificate of judgment, arguing that it was not final or appealable because (1) the trial court had not ruled on the Homeowners' pending CSPA claim and (2) the entry lacked Civ.R. 54(B) language. This motion was not designated as a Civ.R. 60(B) motion for relief from judgment. This was presumedly the case because Civ.R. 60(B) pertains to relief from a "final judgment," and Weber's and Davis' argument was that the judgment was not "final" at all.

{¶ 14} At a hearing on Weber and Davis' motion to vacate the judgment, the Homeowners agreed to voluntarily dismiss the CSPA claim so that the summary judgment

decision would become final. Counsel for Weber and Davis suggested two procedural options to the trial court once the CSPA claim was dismissed and the order was final: (1) they would appeal the grant of summary judgment; or (2) the court could set the case back on the docket, allow discovery, and address the summary judgment issue at the appropriate time because there were disputed factual issues, including, but not limited to, factual issues related to Davis' liability given her lack of affiliation with TFB. The court apparently disagreed with the second option, stating that it had already granted summary judgment and it was satisfied with the decision, which was "still valid."

{¶ 15} The Homeowners subsequently filed a notice "withdrawing" the certificate of judgment. The court then issued a new written final judgment entry granting summary judgment to the Homeowners and stating that the CSPA claim "is dismissed;" this time the court included Civ.R. 54(B) language. A new certificate of judgment was issued for $108,000 against all three defendants.

{¶ 16} Weber and Davis timely appealed from this second judgment, raising four assignments of error.

{¶ 17} We pause here to note that while the trial court also entered summary judgment against TFB, TFB did not file a notice of appeal. As a result, the judgment as to TFB is not at issue in this appeal. This appeal only concerns the two parties who appealed: Weber and Davis.

## II. Analysis

### A. Preliminary Issues

{¶ 18} Before addressing Weber's and Davis' assignments of error, we must address four preliminary issues: (1) whether Weber and Davis have standing to assert assignments of error on each other's behalf, (2) the law of summary judgment and the standard of review, which apply to our analysis of all of the assignments of error, (3) the

- 5 -

impact of failure to oppose summary judgment before a trial court, and (4) the Homeowners' Civ.R. 60(B) argument.

## 1. Standing

{¶ 19} Though not clearly stated in their brief, Weber and Davis both appear to join all four of the assignments of error raised in that brief. This means that Weber joins Assignment of Error No. 1, which pertains only to Davis, and Davis joins Assignment of Error No. 2, which pertains only to Weber. They may not do so.

{¶ 20} In Ohio, "a party does not have standing to argue issues affecting another person," except where "'the error is prejudicial to the rights of the appellant.'" *Jacobs v. Acacia Chattanooga Vehicle Auction, Inc.*, 2011-Ohio-3706, ¶ 16 (10th Dist.), quoting *Benjamin v. Ernst & Young, L.L.P.*, 2006-Ohio-2739, ¶ 4 (10th Dist.). Here, Weber and Davis have made no effort to demonstrate that either of them were prejudiced by the trial court's award of summary judgment against the other. Nor do we find anything in the record supporting such a conclusion.

{¶ 21} As a result, we dismiss, for lack of standing, Weber's and Davis' assignments of error to the extent they pertain to only one of them but are brought by the other. Below, we will describe each assignment of error as being brought only by the party with standing to bring that assignment of error.

## 2. Summary Judgment and Standard of Review

{¶ 22} "Summary judgment is a procedural device used to terminate litigation when there are no issues in a case requiring a formal trial." *Franchas Holdings, L.L.C. v. Dameron*, 2016-Ohio-878, ¶ 16 (12th Dist.), citing *Roberts v. RMB Ents., Inc.*, 2011-Ohio-6223, ¶ 6 (12th Dist.).

{¶ 23} "Civ.R. 56 sets forth the summary judgment standard." *State ex rel. Becker v. Faris*, 2021-Ohio-1127, ¶ 14 (12th Dist.). "Pursuant to that rule, a court may grant

summary judgment only when (1) there is no genuine issue of any material fact, (2) the moving party is entitled to judgment as a matter of law, and (3) the evidence submitted can only lead reasonable minds to a conclusion that is adverse to the nonmoving party." *Spitzer v. Frisch's Restaurants, Inc.*, 2021-Ohio-1913, ¶ 6 (12th Dist.), citing *BAC Home Loans Servicing, L.P. v. Kolenich*, 2011-Ohio-3345, ¶ 17 (12th Dist.). "'An issue is genuine only if the evidence is such that a reasonable jury could find for the non-moving party.'" *Baker v. Bunker Hill Haven Home*, 2024-Ohio-875, ¶ 10 (12th Dist.), quoting *Abbuhl v. Orange Village*, 2003-Ohio-4662, ¶ 14 (8th Dist.). "A material fact is one which would affect the outcome of the suit under the applicable substantive law." *Hillstreet Fund III, L.P. v. Bloom*, 2010-Ohio-2961, ¶ 9 (12th Dist.), citing *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).

{¶ 24} "The moving party bears the initial burden of informing the court of the basis for the motion and demonstrating the absence of a genuine issue of material fact." *Berkheimer v. REKM, L.L.C.*, 2023-Ohio-116, ¶ 18 (12th Dist.), citing *Dresher v. Burt*, 75 Ohio St.3d 280, 292 (1996). To satisfy this initial burden, "[t]he moving party 'must be able to point to evidentiary materials of the type listed in Civ.R. 56(C) that a court is to consider in rendering summary judgment.'" *Adkins v. Middletown*, 2025-Ohio-317, ¶ 60 (12th Dist.), quoting *Kelley v. Dayton Pub. Schools Bd. of Edn.*, 2024-Ohio-979, ¶ 21 (2d Dist.). "Once this burden is met, the nonmoving party has a reciprocal burden to set forth specific facts showing there is some genuine issue of material fact yet remaining for the [trier of fact] to resolve." *Robinson v. Cameron*, 2015-Ohio-1486, ¶ 9 (12th Dist.), citing *Dresher* at 293. The nonmoving party does this by presenting "'specific facts,'" demonstrating the existence of a genuine triable issue; the nonmoving party "'may not rest on the mere allegations or denials in its pleadings.'" *Oliphant v. AWP, Inc.*, 2020-Ohio-229, ¶ 31 (12th Dist.), quoting *Deutsche Bank Natl. Trust Co. v. Sexton*, 2010-Ohio-4802, ¶ 7 (12th Dist.),

citing Civ.R. 56(E). "Summary judgment is proper if the nonmoving party fails to set forth such facts." *Taylor v. Atrium*, 2019-Ohio-447, ¶ 10 (12th Dist.), citing *Puhl v. U.S. Bank, N.A.*, 2015-Ohio-2083, ¶ 13 (12th Dist.). "In determining whether a genuine issue of material fact exists, the evidence must be construed in the nonmoving party's favor." *Vanderbilt v. Pier 27, L.L.C.*, 2013-Ohio-5205, ¶ 8 (12th Dist.), citing *Walters v. Middletown Properties Co.*, 2002-Ohio-3730, ¶ 10 (12th Dist.).

{¶ 25} "This court reviews a trial court's summary judgment decision under a de novo standard." *Faith Lawley, L.L.C. v. McKay*, 2021-Ohio-2156, ¶ 26 (12th Dist.), citing *Deutsche* at ¶ 7. "'[D]e novo review means that this court uses the same standard that the trial court should have used . . .'" *Brock v. Servpro*, 2022-Ohio-158, ¶ 29 (12th Dist.), quoting *Nationwide Agribusiness Ins. Co. v. Heidler*, 2019-Ohio-4311, ¶ 71 (12th Dist.). Therefore, when conducting a de novo review, this court independently reviews the trial court's decision without giving it any deference. *Baker* at ¶ 9. "When an error is found in a trial court's decision granting a summary judgment motion, the trial court's decision is generally reversed and the matter is remanded to the trial court for further proceedings." *Guzzetta v. Guzzetta*, 2024-Ohio-294, ¶ 17 (12th Dist.).

### 3. Impact of Weber's Failure to Oppose Summary Judgment

{¶ 26} The Homeowners argue that Weber and Davis were "in default" and "made no reply to the complaint or motion for summary judgment and failed to appear." As a result, they argue, we may not reverse the trial court's summary judgment decision. The Homeowners are incorrect.

{¶ 27} First, while it is true that Weber and Davis did not file answers to the complaint, they did appear. Davis did so in the form of a "motion to dismiss" that contained a brief argument about her relationship to TFB. Weber did so in the form of a "motion to dismiss" that requested a continuance of the summary judgment hearing. As such, Weber

and Davis both appeared in the case. Moreover, the Homeowners never asked the trial court to find Weber and Davis in default, and the trial court never found them in default.

{¶ 28} Second, while unartfully pleaded and quite brief, Davis' "motion to dismiss" seems to have been an effort to oppose the Homeowners' motion for summary judgment, in that it addressed the issue of Davis' individual liability by arguing that she was not an owner, operator, or employee of TFB.

{¶ 29} Third, even if Weber and Davis did fail to appear or oppose the Homeowners' motion for summary judgment, this would not permit the trial court to grant automatically the Homeowners' motion for summary judgment. It is true, in appeals from summary judgment decisions, that "a party may not raise for the first time on appeal any issue or error that the party could have called to the trial court's attention at a time when the trial court could have ruled on the issue, or corrected the error, or avoided the error altogether." *Webster v. G & J Kartway*, 2006-Ohio-881, ¶ 24 (12th Dist.). But "this principle *does not alleviate the moving party from carrying its burden on summary judgment . . .*" (Emphasis added.) *Webster* at ¶ 25; *see also Scott Holding Co., Inc. v. Turbo Restaurants US, L.L.C.*, 2024-Ohio-5240, ¶ 37 (5th Dist.). As the Ohio Supreme Court has explained, "[t]he lack of an adequate response to a motion for summary judgment by a nonmoving party *does not entitle the moving party to summary judgment*." (Emphasis added.) *Hooten v. Safe Auto Ins. Co.*, 2003-Ohio-4829, ¶ 43. In reaching this conclusion, the supreme court explained that "Civ.R. 56(E) provides that when a party fails to respond properly to a summary judgment motion, summary judgment, '*if appropriate*, shall be entered against the party.'" (Emphasis in original.) *Id.*; *see also Dresher* at 293 (Emphasis in original.) ("[T]he moving party must be able to specifically point to some *evidence* of the type listed in Civ.R. 56(C) which affirmatively demonstrates that the nonmoving party has no evidence to support the nonmoving party's claims.").

{¶ 30} As a result, even if Weber and Davis did not oppose summary judgment before the trial court, the trial court was still required to determine if the Homeowners' motion for summary judgment was meritorious. Likewise, we must still conduct a de novo review to determine whether the trial court's summary judgment decision was erroneous. We now turn to that analysis.

### 4. The Homeowners' Civ.R. 60(B) Argument

{¶ 31} In their appellate brief, as in the trial court, the Homeowners argue that Weber and Davis are not entitled to relief under Civ.R. 60(B). But the matter before the court is an appeal from a Civ.R. 56 summary judgment decision, not a petition for relief under Civ.R. 60(B) or an appeal from the denial of such a petition. The Homeowners' Civ.R. 60(B) arguments are irrelevant to the appeal before us.

### B. Analysis of Assignments of Error

### 1. Weber's and Davis's Individual Liability

{¶ 32} Because they involve related issues, we will examine the first two assignments of error collectively.

{¶ 33} Davis' Assignment of Error No. 1 states:

> THE TRIAL COURT ERRED BY GRANTING SUMMARY JUDGMENT AGAINST DAVIS IN HER INDIVIDUAL CAPACITY.

{¶ 34} Weber's Assignment of Error No. 2 states:

> THE TRIAL COURT ERRED BY GRANTING SUMMARY JUDGMENT AGAINST WEBER IN HIS INDIVIDUAL CAPACITY BECAUSE THE HUBBARDS DID NOT PROVE AS A MATTER OF LAW THAT HE WAS A PARTY TO THE CONTRACT.

{¶ 35} In the first assignment of error, Davis argues that the trial court erred by granting summary judgment in favor of the Homeowners because there was no lawful basis for holding her individually liable for breach of contract. Specifically, Davis argues

- 10 -

that she was not a party to the contract, so she may not be held liable for breaching that contract. In the second assignment of error, Weber makes a similar argument with respect to himself. While Davis arguably raised this individual liability issue before the trial court in her "motion to dismiss," Weber did not. Yet, as explained above, our de novo review of a summary judgment decision must still determine whether the moving party satisfied the summary judgment standard, so we will address the issue of individual liability regarding both Weber and Davis. *Webster* at ¶ 24-25; *Scott Holding Co.* at ¶ 37.

{¶ 36} To establish a breach of contract claim, a plaintiff must prove (1) the existence of a contract, (2) performance by the plaintiff, (3) breach by the defendant, and (4) resulting damages. *Underwood v. Boeppler*, 2015-Ohio-156, ¶ 13 (12th Dist.), citing *Nguyen v. Chen*, 2014-Ohio-5188, ¶ 43 (12th Dist.). "'It is well-established that a contract is binding only upon the parties to the contract and those in privity with them[.]'" *State ex rel. Yost v. Settlers Walk Home Owners Assn.*, 2022-Ohio-3106, ¶ 28 (12th Dist.), quoting *Mergenthal v. Star Banc Corp.*, 122 Ohio App.3d 100, 103 (12th Dist. 1997). Thus, to meet their burden of establishing their entitlement to summary judgment on their breach of contract claims against Weber and Davis as a matter of law, the Homeowners were required to provide Civ.R. 56(C) summary judgment evidence establishing that Weber and Davis were parties to the contact or in privity with them. *Underwood* at ¶ 13; *Settlers* at ¶ 28.

{¶ 37} The Homeowners offered no such evidence. The Homeowners' complaint, which they did not sign or verify, asserted that Weber and Davis are the real parties in interest, rather than TFB. In support, the complaint stated Weber signed the contract with no indication of LLC membership or title, that Weber told the Homeowners that Davis was the project manager, and that they believed TFB may be operated as an "unincorporated partnership." It also stated that "Defendants may not have followed correct legal

procedures for maintaining an LLC and securing the protection of corporate limited liability, and [so Weber and Davis] should be liable in their individual capacity." But statements in a complaint are not admissible Civ.R. 56 evidence if they are not verified, sworn statements. *Y.A.B. ex rel. E.E.W. v. Wallace*, 2023-Ohio-551, ¶ 8, fn.1 (2d Dist.). Here the complaint was not verified, so we must ignore the allegations in the complaint for summary judgment purposes. *Id.* Further, the Homeowners failed to argue in their motion for summary judgment or at the summary judgment hearing that Weber and Davis were individually liable. They did, however, submit Vernon Hubbard's affidavit in support of their motion for summary judgment, and Vernon did make factual assertions in the affidavit that could arguably support Weber's and Davis's individual liability.

{¶ 38} But even assuming the Homeowners properly raised the issue of Weber's and Davis' individual liability before the trial court, the statements in Vernon Hubbard's affidavit that at first glance support the conclusion that the Homeowners contracted with Weber and Davis as individuals do not hold up on closer inspection under the applicable Civ.R. 56 summary judgment standard.

{¶ 39} First, Vernon stated that, "We entered into a contract with . . . Weber and . . . Davis for an addition and other construction services." While this statement on its own might support an individual liability argument against Weber and Davis, it must be read in conjunction with Vernon's statement, in the same paragraph, that, "A true copy of the signed contract is attached." This is plainly a reference to the "contract" that Vernon earlier in that paragraph claimed was made with Weber and Davis. But a review of that contract reveals no basis for concluding that the Homeowners entered into a contract with Davis.

{¶ 40} Instead, the contract contains numerous elements establishing that the only parties to the agreement were TFB and the Homeowners, and *no* elements establishing

that Weber or Davis were parties. For example, the contract defines "TFB Development, LLC" and "Vern and Meredith Hubbard" as the "Party" or "Parties," but nowhere refers to Weber or Davis as parties. The contract states it is made "by and between [TFB]…and [the Homeowners]." The contract states that TFB (referred to as "the Contractor") was responsible for providing its services to perform the work agreed to in the contract, but says nothing about Weber or Davis providing any services. In fact, the contract contains no reference to Davis at all.

{¶ 41} The contract does contain a reference to Weber, but it does not indicate Weber was a party to the contract. Instead, Weber is referred to as "President, Owner" of TFB in the contract's heading on the first page. And Weber signed the contract, but he did so on a line designated for the person signing on behalf of TFB. This is clear because (1) the signature followed the party name "Contractor," referring to TFB, and (2) the signature followed the prefatory statement, "*The Parties* [so, TFB and the Homeowners] agree to the terms and conditions set forth above as demonstrated by *their* [that is, TFB's and the Homeowners'] signatures as follows . . ." (Emphasis added.) Thus the contract includes no indication whatsoever that Weber or Davis were parties to the contract.

{¶ 42} Second, Vernon Hubbard stated in his affidavit that "Weber signed the contract under the title 'Contractor.'" This is a backwards misreading of the contract. The fact that Weber's signature follows the title "Contractor" does not mean that Weber was, individually, the contractor; as explained above, the contract explicitly defines

"Contractor" as TFB, and Weber's signature was plainly intended as TFB's signature.[1]

{¶ 43} Third, Vernon Hubbard stated in his affidavit that "[Weber] told us that he and his wife [Davis] were the owners and principals doing business as LS Contractors." (The contract states that "LS Contractors" is the "doing business as" name of TFB.) Vernon further stated that "They said [Davis] was a project manager and [Weber] was the general contractor." But even if Weber made these statements, they do not establish as a matter of law that Weber was personally liable on the contract. This is the case because the contract's integration clause, set forth in Paragraph 7, states that "This document reflects the entire agreement between the Parties and reflects a complete understanding of the Parties with respect to the subject matter." It also states that the contract "supersedes all prior written and oral representations." (Emphasis added.) Thus, this integration provision rendered irrelevant Weber's oral representations about how he and Davis did business. *Layne v. Progressive Preferred Ins. Co.*, 2004-Ohio-6597, ¶ 11 ("When two parties have made a contract and have expressed it in a writing to which they have both assented as the complete and accurate integration of that contract, evidence, whether parol or otherwise, of antecedent understandings and negotiations will not be admitted for the purpose of varying or contradicting the writing.") (Cleaned up.). The Homeowners do not argue that any other contract applied to the home remodeling project at issue in this case.

---

1. Generally, a member of an LLC is not personally liable for the LLC's debts, obligations, or liabilities, including the LLC's contractual liabilities. R.C. 1706.26; *Von Stein v. Brandenburg,* 2023-Ohio-4481, ¶ 17 (12th Dist.) (decided under former R.C. 1705.48). However, personal liability may arise if a corporate officer signs a contract in a manner that indicates personal responsibility. *Hubbard Family Trust v. TNT Land Holdings, L.L.C.*, 2014-Ohio-772, ¶ 38 (4th Dist.). "'The typical format to avoid individual liability is company name, individual's signature, individual's position.'" (Cleaned up.) *Id.*, quoting *The Big H, Inc. v. Watson*, 2006-Ohio-4031, ¶ 7 (1st Dist.). Perhaps the Homeowners could have argued that Weber did not avoid individual liability because he did not list his position with TFB after his signature. But they did not make this argument. And even if they had, the argument would fail, because, as described above, the language of the contract here makes clear that Weber was signing on behalf of TFB, not in his individual capacity.

{¶ 44} Thus, by the contract's own terms, and even assuming all Vernon Hubbard's factual allegations in the affidavit were true, the Homeowners submitted no Civ.R. 56(C) evidence to establish as a matter of law that Weber and Davis were parties to the contract, in privity with a party to the contract, or otherwise individually liable on the contract.[2] As such, the Homeowners did not meet their burden and the trial court erred in granting summary judgment in favor of the Homeowners.[3] We therefore vacate the grant of summary judgment entered against Weber and Davis and remand the case to the trial court for further proceedings.

{¶ 45} Because neither Davis nor Weber filed a motion for summary judgment, we do not reach the issue of whether summary judgment should be granted in their favor on the basis of individual liability or whether any other basis for liability exists.

{¶ 46} We sustain the first and second assignments of error.

### C. Proof of Breach and Damages

{¶ 47} Weber's and Davis' Assignment of Error No. 3 states:

> THE TRIAL COURT ERRED BY GRANTING SUMMARY JUDGMENT TO THE HUBBARDS FOR BREACH OF CONTRACT WHEN THEY DID NOT PROVE EITHER A BREACH OF THE CONTRACT OR THE PROXIMATE CAUSE OF THEIR DAMAGES.

{¶ 48} Weber's and Davis' Assignment of Error No. 4 states:

> THE TRIAL COURT ERRED BY GRANTING SUMMARY JUDGMENT TO THE HUBBARDS FOR BREACH OF

---

2. Nor did the Homeowners make any argument about privity or other bases for individual liability on appeal other than as described above.

3. The Homeowners plainly will not agree with our conclusion, explained above, that summary judgment was erroneous in this case because they did not establish, as a matter of law, that Weber and Davis were individually liable. But the Homeowners implicitly conceded that summary judgment was erroneous for a different reason—that is, because they believe there are disputed issues of material fact. They made this implicit concession in their appellate brief when they stated, "The contract and [Weber's and Davis'] statements to the [Homeowners] were contradictory at best" regarding the issue of whether the Homeowners were contracting with Weber and Davis individually. This may explain why the Homeowners' appellate brief, rather than defending the summary judgment decision in a detailed manner, provides a brief argument that focuses more on "finality of judgments" and Civ.R. 60(B).

CONTRACT WHEN THEY DID NOT PROVE DAMAGES.

{¶ 49} In their third and fourth assignments of error, Weber and Davis contend the trial court erred by granting summary judgment because the Homeowners failed to establish a breach of contract and did not prove damages. However, in light of our resolution of the first and second assignments of error, we find these assignments of error to be moot. The third and fourth assignments of error therefore, are moot and need not be considered.

### III. Conclusion

{¶ 50} For the reasons set forth above, we vacate the trial court's grant of summary judgment with respect to Davis and Weber and remand this matter to the trial court.

{¶ 51} Judgment reversed and remanded.

HENDRICKSON, and SIEBERT, J.J., concur.

# J U D G M E N T   E N T R Y

The assignments of error properly before this court having been ruled upon, it is the order of this court that the judgment or final order appealed from be, and the same hereby is, reversed and remanded.

It is further ordered that a mandate be sent to the Clermont County Court of Common Pleas for execution upon this judgment and that a certified copy of this Opinion and Judgment Entry shall constitute the mandate pursuant to App.R. 27.

Costs to be taxed to appellee.

_____
*/s/ Matthew R. Byrne, Presiding Judge*

_____
*/s/ Robert A. Hendrickson, Judge*

_____
*/s/ Melena S. Siebert, Judge*